## No. 6392.

### LOUIS MATHÉ vs. N. O. SUGAR-SHED COMPANY.

No evidence is admissible to show custom or usages of trade contrary to law, and especially to a prohibitory law.

The holder of the Receipt of the New-Orleans Sugar-Shed Company, for sugar stored with them, must be fully protected, under the provisions of Act No. 150 of 1868, and he will recover from the Company the value of the sugar, if it has been disposed of, *without his written assent.*

The refusal of a creditor to receive payment of his debt on condition of withdrawing or retracting a criminal charge made by him against his debtor, is commendable and cannot impair his right to sue a third person, liable for the debt.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier,* J.

C. E. Schmidt for Plaintiff and Appellee :

The Receipt of Defendants was for sugar stored with them for account of Plaintiff.

By the stringent provisions of Act No. 150 of 1868, sec. 4 (Rev. Sta. sec. 2480), Defendants were forbidden from permitting the transfer or removal of the sugar without the written assent of the person holding their receipt.

The evidence offered by Defendants, to establish the custom of brokers and merchants, in dealing with them, to justify their parting with the sugar, was clearly inadmissible. 22 An. 378.

The evidence failed to show any assent on Plaintiff's part that the sugar should be delivered to Martin.

The offer to pay the debt, upon retraction of the criminal charge against Martin, cannot, with any reason, be made equivalent to a real tender, followed by a consignment. C. C. art. 2167.

Robert Mott and T. J. Semmes for Defendants and Appellants.

The opinion of the Court was delivered by

Poché, J.  The Sugar-Shed Company is appellant from a judgment condemning it to pay to plaintiff the sum of two thousand dollars, as the alleged value of twenty-six hogsheads of sugar stored for account of plaintiff in one of the sheds of the company, and subsequently removed therefrom and disposed of without this authority or consent.

The company for defense urges its discharge from any liability to plaintiff, on the following grounds :

1st. That the sugar had been stored by one J. J. Martin, who really was the owner of the same, although the receipts had been taken by him in the name of plaintiff, but that Martin had always retained the control and disposition of said sugar.

2d. That the sugar having been thus stored, as a collateral security for a debt due by Martin to plaintiff, the latter had authorized and empowered Martin to sell and withdraw the sugar, so as to raise the funds necessary to pay and settle his indebtedness to plaintiff.

3d. That subsequently Martin or some one on his behalf had offered to pay plaintiff in full.

The first question to be considered is the refusal of the District Judge to grant a new trial to defendant, on the ground of newly discovered evidence.

The president of the company, in support of the motion for a new trial, swears that since the trial he had discovered that while testifying before a committing magistrate in this city, in a criminal prosecution against Martin, on a charge growing out of these identical sugar transactions, plaintiff had made the following statement in reference to this very matter :  " After the note came due, Martin came to my office, and he says :  ' Mr. Mathé, I am going to Vicksburg, and I can't pay you that note, because I did not sell that sugar yet.  I am going there to get some money, and I wish you would renew that note for me one month more.'  I did so."

Appellant urges that this statement shows consent on the part of plaintiff to the withdrawal of the twenty-six hogsheads of sugar by Martin, and that this would change the result of the litigation.

We do not think so.  The receipt under which the sugar was stored reads in substance as follows :

" New Orleans Sugar-Shed Company,

" New Orleans, May 25, 1875.

" Received for account of Mr. Louis Mathé fourteen hogsheads of sugar, marked J. B., twelve hogsheads sugar, marked B.

" JOHN L. MONIER, Clerk."

The company, under its charter, is subject to the operation of Act No. 150 of the Legislature of 1868, regulating the issue of receipts or

bills of lading by cotton-presses, wharfingers, and others receiving produce and other goods in storage. And its rights and liabilities in this case are to be tested under section four of said act, which reads as follows:

"That no cotton press, wharfinger, or other person shall sell or incumber, ship, transfer, or in any manner remove or permit to be shipped, transferred, or removed beyond his control any goods, wares, merchandise, grain, flour, or other produce or commodity for which. *a receipt shall have been given by him as aforesaid,* whether received for storage, shipping, grinding, manufacturing, or other purpose, *without the written assent of the person or persons holding such receipt.*"

Admitting, for the sake of argument, that the verbal consent of plaintiff could operate a discharge of the company under this stringent rule, we are of opinion that the statement of Mathé, relied upon by appellant for a new trial, does not establish such a consent. It could at most show consent to sell the sugar before enforcing payment of the note which it was intended to secure, but it cannot be construed to mean an authority to withdraw the sugar from the shed before payment of the debt.

It would be folly for a creditor to take such security for debts, and allow the debtor, by his own act, to cancel the receipt and the security by disposing of the property thus stored in the name of his creditor, as a security for his debt.

Besides, we see that plaintiff had been questioned by counsel touching this very statement, which he had made before the committing magistrate, and he explains it in a manner which is conclusive against appellant's construction of his statement; and this interrogatory by appellant's own counsel suggests the surmise that the evidence was not entirely discovered after the trial of this case.

The motion for new trial was therefore properly overruled.

On the merits, we see no strength in the defense set up by the company:

1st. On the first ground, as to the ownership of the sugar, the evidence shows that the company received the sugar for account of Louis Mathé, and it cannot be allowed to deny its own formal receipt. Mathé was the party holding the company's receipt, and under the law he must be protected as the owner of the sugar.

The fact that Martin, who was a sugar-broker, stored the sugar, cannot affect the rights of plaintiff or modify the responsibility of the company. The fact that he frequently stored sugars in the sheds, taking receipts in his own name, and that on this occasion he took the receipt in the name of Mathé, was ample notice to the defendant that

no one but Mathé could control, remove, transfer, or otherwise dispose of the goods thus stored.

2d. The second ground of defense, the alleged authority of plaintiff to Martin, empowering him, at his will and discretion, to remove the sugar, is not better substantiated by the evidence.

Martin himself does not swear positively that he was thus authorized, for, on cross-examination, in answer to a direct question on this point, he says: "I so understood it." And, on the other hand, Mathé repeatedly and positively denies having given any such authority. The fact of his exacting from Martin the company's receipt for twenty-six hogsheads sugar in his own name, as a condition precedent and "*sine qua non*" of his lending him the $2000, and the ordinary prudence characterizing the conduct of money-lenders, strongly corroborated his testimony, and allows no reason to even suspect or presume such a consent.

In this connection, defendant introduced, and the court *a qua* admitted, notwithstanding plaintiff's objections, the testimony of several witnesses for the purpose of proving the existence of a habit or custom heretofore prevailing among sugar dealers and brokers on the levee and the Sugar-Shed Company, under which goods stored in the sheds were usually delivered to agents, brokers, and clerks, without the express authority, written or otherwise, of their principals, or employers, or of those holding the company's receipts. This ruling of the judge was manifestly erroneous. No evidence can be admitted to show habits and usages of trade contrary to law, and especially to a law so positive and prohibitory in its character as Act No. 150 of 1868, which goes so far as to provide criminal penalties for its infraction. Defendant could certainly not claim immunity from the operation of this statute; nor to be exempt from the force and effect of all laws governing the rights and liabilities of all persons receiving produce, goods, or other commodities in storage, and even when such storage, as in the case of this company, is made compulsory on the owners of the merchandise.

3d. In the third place, we can't see how the liability of the company holding the property of plaintiff can be affected by any offer made to him by his debtor, Martin, or some one in his behalf, to settle the indebtedness secured by the transfer of the sugar, which thus became his property. The evidence, besides, fails to show conclusively that an unconditional tender of the whole amount due by Martin to plaintiff was at any time made to Mathé, by Martin, or his brother, or his attorney. The instructions conveyed by the telegrams of his brother, and the very nature of things, show that the motive of the latter in sacrificing his own means, for the payment of that particular debt of his brother, was to release him from the clutches of the law in the criminal prosecution pending against him, and to screen the family name from a lasting

Mathé vs. N. O. Sugar-Shed Company.

stain. No offer of a settlement was made before the criminal proceedings were begun. None would have been made, if no criminal prosecution, with an unpleasant prospect of success, had been instituted against J. J. Martin. And if, under such a belief, plaintiff did refuse a settlement in full, conditioned upon his withdrawing and retracting the charge which he had seriously preferred against Martin, he fearlessly performed a citizen's duty, for which his conduct is commendable, and it should certainly not impair his rights to recover property which he had entrusted for safe keeping to the defendant.

The company assumed a full and legal responsibility for the sugars which were stored in its shed; it allowed the sugars to be removed, sold, and transferred, without the authority or consent of the person holding its receipt; its liability is therefore fixed by law, and was correctly adjudicated by the court a qua.

It is therefore ordered that the judgment of the lower court be affirmed with costs.