(54 South. 920.)

No. 17,904.

CLEMENT v. SOUTH ATLANTIC S. S. LINE.

(Jan. 16, 1911. On Rehearing, April 24, 1911.)

*(Syllabus by the Court.)*

1. PRINCIPAL AND AGENT (§ 69*)—CUSTOMS AND USAGES (§ 10*) — LEGALITY — DUTY OF AGENT.

An agent must account to his principal for whatever he has received, even unduly, by virtue of his procuration. An agent of a ship broker must restore to his principal all rebates or refunds received by him, in the absence of an express agreement to the contrary. Custom cannot prevail against the provisions of law.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 130–145; Dec. Dig. § 69;* Customs and Usages, Dec. Dig. § 10.*]

On Rehearing.

2. PRINCIPAL AND AGENT (§ 81*)—RIGHT OF AGENT TO COMPENSATION—COMMISSION.

Where a steamship agent begins to work upon the basis of a commission on freight booked by him, he to pay his own office expenses, and, by subsequent agreement, is placed on a salary, with office expenses to be paid by his employer, it is illogical and inadmissible, in the event of a subsequent disagreement, for the employer to deny him the commissions earned under the original agreement, and, at the same time, charge him with office expenses up to the date when the subsequent agreement became effective.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 81.*]

3. EVIDENCE (§ 587*)—WEIGHT—CIRCUMSTANTIAL EVIDENCE.

It does not follow that, because an agent admits receiving one rebate, he is to be charged with another, which he denies having received and to which no one testifies; or that, because an amount that he swears was obtained as a loan should not, on account of his relations to the lender and to others, have been borrowed, it should be held to have been obtained as a rebate and not as a loan.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2436; Dec. Dig. § 587.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Alfred H. Clement against the South Atlantic Steamship Line. Judgment for defendant on a reconventional demand, and plaintiff appeals. Affirmed.

Hall, Monroe & Lemann, for appellant. W. S. Parkerson, for appellee.

LAND, J. Plaintiff sued the defendant for the sum of $1,200, unearned salary as agent, on the ground that he was discharged without just cause before the expiration of the term of the employment, and for the further sum of $10,000 as damages for alleged slander.

For answer, after pleading the general issue, the defendant admitted the employment of the plaintiff as agent, but averred that the employment was by the month, at a salary of $250, and further averred that the plaintiff was discharged for just causes, to wit, overdrawing his account, by the sum of $513.99; drawing a check for $1,500 to his own order, and having the same certified, and charged to defendant, in anticipation of his discharge, and demanding and receiving rebates or refunds from sundry persons with whom plaintiff contracted as agent of the defendant. Defendant specially denies the alleged slander with intent to defame and jure the plaintiff, and avers that the statements of its vice president as a witness before the Port Investigation Committee were privileged communications, and were absolutely true as matters of fact.

Defendant reconvened and prayed for judgment against the plaintiff for $513.99, and for the rebates or refunds set forth in the answer; the total amounting to $782.04.

There was judgment rejecting plaintiff's demands, and in favor of the defendant for the full amount of the reconventional demand. Plaintiff has appealed.

The trial judge found that there was a shortage in plaintiff's account as agent of the defendant as alleged in the answer, but in his written opinion says:

"The court emphatically states that it finds no evidence in the record that the plaintiff was short on a settlement of accounts in a criminal sense; but the fact is he believed he had the right under his contract and by agreement to

charge the items making up the shortage against the defendants. In this plaintiff was in error."

An auditor examined the books of the plaintiff and made a tentative report, omitting certain items for the time being. After further inquiry and investigation, the auditor made a report showing a balance of $618.30 due by the plaintiff. Before the answer was filed, additional credits were allowed by the defendant, reducing such balance to $513.99.

In plaintiff's brief, on pages 17 and 18, the tentative report of the auditor is assailed, and a list of credits given as disallowed by the auditor. As a matter of fact, the item of salary—September and October—$500 is allowed in the account annexed to the answer in lieu of a smaller amount of commissions, also the item of old furniture, $204.75, less $83; and also expenses to Savannah.

The items of office expenses for September and October, $233.76, for each month, were clearly inadmissible, because the conceded agreement was that plaintiff should receive a commission and pay his own office expenses. This agreement was not changed or modified until late in October.

The account annexed to the answer shows that plaintiff is credited with a part of the expenses for said month, to which he was not entitled. It appears that about the end of October the defendant sent one Richardson, who was secretary and treasurer of the company, to New Orleans for the purpose of assisting plaintiff in the organization of its office. Richardson opened a set of books, and, without any authority whatever, gave plaintiff credit for $233.76 for expenses for October. The other items set forth in plaintiff's brief were either allowed or are too small to affect the shortage. The account in question was a liberal settlement of all just claims of the plaintiff.

The averments in the answer relative to the certified check for $1,500 were duly proven. In his written opinion the trial judge says:

"The court considers the conduct of the plaintiff in this check incident gave defendants a legal cause for discharging him."

We approve the ruling.

This check was not used by the plaintiff, but was held by him for several days.

The charge that the plaintiff received rebates is fully proved, and in fact is admitted. The defense is custom among ship brokers at this port. The evidence is that some brokers receive rebates or refunds, and others do not.

[1] Whatever may be the custom, the law is that an agent is bound to restore to his principal whatever he has received by virtue of his procuration, even should he have received it unduly. Civ. Code, art. 3005. In the case at bar the full face of bills were paid by defendants, and refunds were made to its agent.

Under the plain test of the law, the plaintiff is bound to restore the money received as rebates or refunds. Custom cannot prevail against the provisions of the law to the contrary. Meyer v. R. R. Co., 35 La. Ann. 897. That the defendant, or other brokers, take rebates does not excuse plaintiff, as agent, from accounting to his principal.

We agree with our learned Brother below in his righteous condemnation of this species of commercial graft.

Judgment affirmed.

### On Rehearing.

MONROE, J. A rehearing was granted in this case upon the items of the reconventional demand.

1. Defendant claims, and has been allowed, $513.99 for alleged overdraft in plaintiff's account; that is to say, in plaintiff's account, as sued on. But a re-examination of the record satisfies us that that amount is not supported by the evidence; the facts, in that connection, being as follows:

[2] Plaintiff was first employed by defendant about September 3d or 4th, under a tentative agreement to the effect that he was to receive 2½ per cent. commission and a $50 "agency" fee; that is to say, 2½ per cent. commission on the freights booked by him and earned by the ships, and an additional sum of $50 for each ship handled by him, regardless of freight. And he was to pay his own expenses, including office rent, clerk's hire, etc. He worked under that arrangement until November 22d or 23d when Mr. E. W. Smith, the vice president of the company, came here from Savannah, and a new agreement was made, whereby plaintiff was to receive a salary of $250 per month, and defendant was to pay the expenses of the office; it being part of the agreement that it should take effect from and after November 1st. It appears that plaintiff had, in the meantime, and whilst working under the original agreement, booked freights (which were afterwards earned by the ships handled by him), the commission on which amounted to $3,159.69, and it seems clear that, under the new agreement, he should have been credited with so much of that amount as had been earned prior to November 1st, and charged with the office expenses up to that date, and that, thereafter, he should have been credited with his salary, at $250 per month; the company to pay the office expenses. The account sued upon is based upon neither the one theory nor the other, and the balance shown by it, to the debit of plaintiff, was reached in rather an arbitrary way and under the following circumstances, to wit:

About, say, November 13th, there had come to New Orleans, from the headquarters of the defendant company, at Savannah, a Mr. C. H. Richardson, bearing a letter to plaintiff, from defendant's vice president and general manager, which read as follows:

"Savannah, Georgia, November 12, 1907.
"Mr. A. H. Clements, Agent * * *: This will introduce Mr. C. H. Richardson, secretary and treasurer of the company, who is coming with you to organize your office force and put in a new set of books to conform to our ideas. Please extend to him every facility at your command. I am expecting to be in New Orleans about the beginning of the next week and will then go into the subject of the employment of new men to meet the changed conditions.
"Yours very truly."

Mr. Richardson proceeded, in the first place, to provide himself with what he considered necessary for the purposes of the work to which he had been assigned, and which included an office safe and a lot of office furniture; the safe and part of the furniture being purchased, as we understand, from dealers, in the usual way, and part of the furniture being purchased from plaintiff, whose account Mr. Richardson credited with $204.75, as the agreed price. Mr. Richardson then did what he considered proper in the way of putting in a new set of books, which seems to have included an original system of bookkeeping, and matters were in that condition when Mr. Smith came to the city, in the latter part of November, and, having made the new agreement with plaintiff to which we have referred, returned to Savannah. Thereafter, about February 8, 1908, not being altogether satisfied with the way in which the business was being managed in New Orleans, he sent down a Mr. Crawford to audit the books and report generally upon the condition as he might find it. And Mr. Crawford reported, very soon, that the books were in a mess, and that there were things which seemed to require looking into, and thereupon he settled himself to the work of auditing the books and looking into things and reporting.

After working for about a month, he prepared a statement of plaintiff's account, showing a balance to his debit of $1,154.23. Very shortly afterwards—probably on the same day—he approved another statement (prepared, it is said, by a Mr. Pearce, who had also been sent to the office by the defendant), showing the debit balance to be $613.30.

And later (during the same month, of March, 1908) he furnished the statement on which the reconventional demand is predicated and which shows a balance against plaintiff of $513.99. In arriving at those balances, Mr. Crawford did not confine himself to the figures in the books, but included or excluded items appearing to the credit of plaintiff's account according to the dictates of his own judgment, and the difference between the first and last statement is attributable to the fact that some of the items, originally excluded, were finally accepted and approved by Mr. Smith, and others were not. Among the items rejected by Mr. Crawford and not, thereafter, fully accepted by Mr. Smith, was the one of $204.75, for office furniture which Richardson had purchased from plaintiff (along with the safe and other things bought by him from other persons), and for which he (Richardson) had credited plaintiff on the books. Richardson's authority to buy the other things does not appear to be questioned, and, so far as we are informed, the defendant has retained and is in possession of the furniture purchased from plaintiff. There is not a syllable of evidence in the record to show that it was not worth the price agreed on, and why Mr. Smith should, subsequently, have approved the item to the extent of $121.75 and rejected it for the balance of $83, we fail to see.

On the first statement prepared by him, Mr. Crawford failed to credit plaintiff with any salary, for September or October, and, though he credited him with part of the office expenses for October, he failed to credit him with part and failed to credit him with any such expenses for September. And, in so far as he failed to allow the credits mentioned, his statement conformed to the agreement under which plaintiff was working. On the other hand, Mr. Crawford failed to credit plaintiff with any commissions, save those earned on one ship (the Sandsend); whereas, he had earned commissions on the ships "Conway," "Dalmira," "Tunstall," "Sark," "Strathnevis," and "North Sands." On the second statement, approved by him, and on the account sued on, Mr. Crawford credits plaintiff with salary for both September and October and with office expenses for October, but fails to credit him with office expenses for September, and also fails to credit him with the commissions as stated above. Plaintiff complains of this and says that he is entitled, either to the commissions, from which he was to have paid his own salary and office expenses in September and October, or else (and he is willing to accept that view) that defendant should keep the commissions and pay both salary and expenses for the two months. The argument appears to us to be unanswerable, and the office expenses for September, amounting to $233.76, should be allowed.

The reconventional demand charges plaintiff with $118.05, which is made up of two items—$68.05 and $50—said to have been received by him, from one Ross, in the way of rebates on what is called "dunnage." Plaintiff admitted, in his testimony, that he had received the $68.05 and denied that he had received the $50. Plaintiff is charged with $100, as a rebate, or refund, said to have been received from one Thriffley, on account of stevedore work; and he testified concerning that matter, in part, as follows:

"Q. Did you get any rebate on stevedoring? A. No, sir. Q. You never got anything from Mr. Thriffley? A. I got $100 from Mr. Thriffley. That was before the South Atlantic Line had a steamer at all. He gave me a check for $100, advanced to me. Q. You borrowed $100 from him? A. Yes, sir; in September. Q. Never have paid it back—that loan? A. Never paid it back. He has got my receipt to this day. * * * A. When the ship came, I got some money from Mr. Rawlins and had a little money to pay expenses when the first steamer arrived, and I told Thriffley: 'I will only need $100 from you right now,' so he sent me his check for $100, and I gave him a receipt for it: 'Received by A. H. Clement, as a loan $100.' And that was the only $100 I have got from Thriffley, and never gave it back because he said he was making good money from the ships

and others. Q. You received it as an obligation? A. Yes, sir."

There is no other testimony bearing specifically upon the charges above mentioned, save some little further explanation by plaintiff, and that given by Crawford, to the effect that he informed Mr. Smith about them, and his examination then proceeds as follows:

"Q. Where did you get it (information as to rebates received by Clements)? A. Direct from the people that gave the rebates. Q. From Thriffley? A. From Thriffley. Q. Mr. Ross? A. Mr. Ross and Mr. Bisso. Q. How did you get that information? A. Went out and got it. Q. How did you go out and get it? A. Just making an investigation of accounts, to find out whether everything was all right."

[3] It is stated, and not denied, that both Ross and Thriffley were in court during the trial, as witnesses for defendant, and, as they were not called to deny what was said by plaintiff, or to substantiate the hearsay testimony of Crawford, it is evident that the charges in question are not sustained, for, whatever may be said of the propriety of plaintiff's obtaining money, as he did, from Ross and Thriffley, it does not follow that, because he so obtained $68.05 from Ross, he also obtained $50; nor does it follow, because, in view of their relations, actual and prospective, it was indelicate and improper for him to borrow money from Thriffley, that he may not have done so, or that what he swears was a loan, was, in fact, intended as a rebate, to be charged against some future stevedoring contract.

Our reconsideration of the matter, therefore, leads us to the conclusion that the judgment in favor of defendant should be reduced by the amount of the items herein above considered, aggregating $466.76.

It is, accordingly, ordered, adjudged, and decreed that the judgment heretofore handed down be amended by reducing the amount allowed defendant on its reconventional demand from $782.04 to $315.28, and by con- demning defendant, instead of the plaintiff, to pay the costs of the appeal. It is further decreed that, as thus amended, said judgment be reinstated and made the final judgment of the court.