Plaintiff, on February 1, 1943, was employed by defendant, the Pelican Stores, a copartnership composed of Sam Schuster, Dave Schuster and Harold Lazarus, to manage its branch retail liquor business, under the trade name of Royal Liquor Store, located at 2244 Greenwood Road, in *Page 66 
the City of Shreveport, Louisiana. His salary was fixed at $30 per week, and in addition, he was to receive 15 per cent of the profits of the business.
For cause, plaintiff was summarily discharged from his employment on December 23rd. He was then due a balance for his services, the exact amount of which he did not know. It required the posting of books and auditing of accounts to ascertain the exact amount due him.
Plaintiff instituted this suit against his employer and its co-members to recover $1,126.50, alleged amount due him on salary and commission accounts, after deducting the sum of $3,108.97, paid to him and, as by him alleged, less "any other credits defendant may show they are entitled to receive." He also sues for amount alleged to have been paid by him to defendant in connection with the operation of said business in excess of all amounts actually due by him to them, estimated at approximately $200. Additionally, he sues for $1,000 as attorney's fee and for salary and commissions from the date of his discharge until payment thereof has been made to him as provided by Act No. 138 of 1936. He also alleged: "* * * that petitioner should have the right and is entitled to an accounting from the defendants, as well as the right to inspect in open court all of the books and records covering the operation of said business during the employment term."
Answering, the defendant admits that plaintiff is entitled to a full and complete accounting from it and to inspection of its records covering the period of his employment; but defendant denies owing him any amount. In the alternative, defendant avers that plaintiff while in its employ embezzled large sums of its money, the full amount thereof being unknown to it, which amounts so embezzled it pleads in compensation and set-off against any financial liability found to be due by it to him. Defendant avers that in direct violation of instructions to sell only one bottle of liquor to each customer he habitually, sold liquors by the case to anyone who would buy. The following specific instances are named, to-wit:
December 17-E.C. Tillery-4 cases- $336.00 December 22-Ed Kennedy-5 cases- 414.00 August 26-W.H. Pearson-3 cases- 298.18 ---------- Total $1,048.18
As to these three sales, defendant alleged that plaintiff received the price in each, failed to enter same in the records of the business and failed to pay over same to defendant, but, on the contrary, embezzled the same.
Defendants further alleged:
"Your respondents now aver that the said plaintiff herein made numerous sales to persons, firms or corporations, from which sales he appropriated and embezzled a part or all of the proceeds thereof, and that your respondent is entitled to a full and complete accounting on the trial of this cause with reference to all such sales, and your respondents hereby plead in compensation and set off any amount the Court may find that your respondent owes to the plaintiff such amounts as may be found on the trial hereof to be owing to your respondents by the said Earl A. Foreman due to the amounts embezzled as above set forth.
"And now assuming the position of plaintiff in reconvention, your respondents, in the further alternative, do hereby allege that the plaintiff herein, Earl A. Foreman, is indebted to them in the full sum of $1048.18, together with other amounts the exact amount being unknown to your respondents, and in this connection your respondents do allege the identical facts and allegations set forth in paragraphs 16 to 26, inclusive, hereinabove.
"Further, as plaintiffs in reconvention, they aver that they are entitled to a full and complete accounting from the said Foreman as to all sales made by him not accounted for in his written reports furnished to your respondents, and to a full determination by the Court as to the exact amount embezzled or appropriated by the said Foreman during the course of his employment; and that they should have judgment herein for the amount above set forth, plus any additional amounts that may be discovered by such accounting, with legal interest on such amount from judicial demand until paid, and costs of this suit."
Defendants' prayer is in consonance with the allegations of the answer and reconventional demand. There was judgment in favor of plaintiff for $1,061.49, with interest.
There was judgment in favor of the defendant "ordering and commanding the said Earl A. Foreman to render an accounting *Page 67 
unto said defendant within not more than thirty days from date hereof." Defendant and its component members prosecute appeal from this judgment.
 Motion to Dismiss Appeal
[1] The appellee has moved to dismiss the appeal on the alleged ground that the money judgment in his favor "is acquiesced in and agreed to by the defendant and not subject to appeal."
The motion is without merit.
Defendant did not in the true sense of the term confess judgment in favor of plaintiff; and the prosecution of this appeal from the judgment, as rendered, negatives any inference of acquiescence.
To save time, expense, and the introduction of many records, defendant candidly admitted that it was due plaintiff a certain amount on commission account but strenuously denied, and persists therein to this time, that it would be due plaintiff any amount when and after he had rendered to it a faithful account of his stewardship as agent. This is not a confession of judgment from which no appeal may be prosecuted. The case of Rosenberg v. Derbes et al., 161 La. 1070, 109 So. 841, is controlling of the question.
The motion to dismiss is overruled.
Prior to trial of the case plaintiff was given ample opportunity to inspect defendant's books and records to determine the amount due him on salary and commission accounts. He and his counsel availed themselves of this privilege.
At the inception of trial defendant admitted that it was due plaintiff on commission account $1,102.22, less withholding tax of $40.73, or a net balance of $1,061.49. This is the amount for which judgment was rendered in favor of plaintiff. Said admission abbreviated materially the time consumed in trial of the case and obviated the introduction of much documentary proof and considerable testimony. Beyond this admission, plaintiff tendered only a small amount of evidence.
Defendant sought by cross-examination of the plaintiff to substantiate its plea of compensation and its allegations concerning sales in case lots by him and his failure to account for the prices received by him therefor. This effort was met with a plea of immunity; that is, that answers to the questions propounded might incriminate plaintiff. Section 11 of the Bill of Rights of the State Constitution, reading as follows, is relied upon: "No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution."
The court sustained this plea. Defendant was unable to elicit from plaintiff any information touching transactions and matters about which he alone possesses complete knowledge.
When plaintiff was employed by defendant to manage its retail business at 2244 Greenwood Road, he was specifically instructed to sell only one bottle of liquor at a time to each customer. Defendant fixed the price at which the various kinds of liquor should be sold and these prices were supposed to have been conspicuously posted.
A shortage of liquor developed in the Shreveport area, as was true all over the country, in the latter part of 1942, and became more pronounced as time passed. However, defendant did not suffer from this shortage as others did, because at the beginning of the year 1943 it had on hand some 7,000 cases of whiskey. To its several retail establishments it rationed liquor in cases as their needs required. Defendant, by a system of proration, supplied from its wholesale department city and out of town customers. As the supply of liquor grew less the demand therefor increased and, naturally, the price went up. A "black market" soon developed. The temptation to reap unconscionable profits was yielded to by many who had liquor for sale. Plaintiff quickly seized upon the opportunity to profit from this condition, and in violation of positive instructions from his employer began, during the month of his employment, to sell in case lots the stock allotted to his place of business, intended for the retail trade only. The prices he asked and received were materially in excess of those fixed by defendant prior to ceiling price fixing by the O. P. A., which went into effect September 1, 1943; and likewise his prices after that date were in excess of those fixed by the O. P. A. He wholly ignored all price fixing. Defendant, prior to September 1st, learned of plaintiff's violation of instructions in the respect mentioned and closed the business for three weeks.
Plaintiff is a nephew of Dave Schuster's wife. He and a sister were taken from an *Page 68 
orphanage in the City of New Orleans when very young and reared to manhood and womanhood by Mr. Schuster. They lived in his home and were treated as members of his family. Because of this relationship, and feeling that plaintiff had been sufficiently disciplined for his breach of duty, the business was reopened, but only for retail. Notwithstanding all this, plaintiff promptly resumed his former practice of selling liquor in case lots. So anxious was he to sell liquor in this manner he called prospective purchasers on the telephone, wrote letters to others and at times loaded his own car with cases and peddled same to persons he had good reason to believe would be interested in buying. Some of these were in business many miles from Shreveport.
Defendant again learned of plaintiff's action and he was finally discharged. When informed of the cause of dismissal, he rather contemptuously replied: "You cannot prove it on me".
Plaintiff personally consummated all sales of liquor in case lots. He religiously forbade the assistant manager to initiate or consummate such transactions, except under his personal direction. As a rule, he requested that the price be paid in cash, and this was quite often done. In those cases where checks were given, he invariably had the checks cashed and himself handled the money. He alone would run the cash or some portion of it through the mechanical cash register. In no instance did he run through the register at one time more than $30, regardless of the price received by him. The machine would register to $399. The result plaintiff desired to secure from this course of action is fairly obvious. He pursued the practice invariably until the time of his discharge.
In addition to the three instances specifically alleged upon by defendant, aggregating sales to the amount of $1,048.18, defendant, over plaintiff's objection, was allowed to introduce proof that established other sales by him in case lots, the total prices of which exceeded $2,000.
The record of a sale was supposed to be made in this manner: The cash is deposited in the cash register and the amount thereof, by proper manipulation of the machine, is registered upon a strip of paper. The portion of the paper containing the amount of the sale is then torn off and preserved, and on it is written the quantity of liquor sold and the brand. At the close of business each day, from these various slips a recapitulation was made and delivered to the defendant the following morning. This method of business made it possible to know from day to day exactly the amount of cash taken in, the quantity and brands of liquor sold and the quantity and kinds supposedly on hand. Since plaintiff handled and rang up all sales in case lots it is easy to understand, as charged by defendant, that he could have retained from the price of each sale the amount received by him in excess of the posted price or the price fixed by the O. P. A. and yet his accounts would be in balance and superficially correct.
It is shown that in at least one instance, and possibly in others, plaintiff, instead of immediately running the sale price through the cash register, deposited the amount in a small box near by. In such instance, and in others, he informed the assistant manager that he would ring up the amount at his leisure. It is also shown that he constantly kept a small note book about his person in which he recorded all sales in case lots. No one was allowed to view the entries in this book. It formed no part of the records of the business.
It is apropos here to say that plaintiff's entire course of conduct while wholesaling his employer's goods was most unusual, irregular, and highly suspicious. No good business reason can be assigned for his actions. They are wholly irreconcilable with good faith and honesty of purpose.
We are convinced that plaintiff's action in wholesaling defendant's liquor was prompted solely by the desire to profit personally. We lean to the opinion that he appropriated and embezzled only that part of the prices of the sales received by him, in excess of the posted or O. P. A. prices. He alone knows how much this amounted to.
[2] As a legal proposition there is no doubt that plaintiff is liable to defendant for the full price of all case sales of liquor made by him. The fact that the prices exceeded what defendant was willing to sell for is immaterial. Surely he is not entitled to pocket the difference, but should account for it.
[3-6] Articles 3004 and 3005 of the Civil Code, referring to the duty of an agent, lay down fundamental rules on the subject. They read: *Page 69 
"He is obliged to render an account of his management, unless this obligation has been expressly dispensed with in his favor."
"He is bound to restore to his principal whatever he has received by virtue of his procuration, even should he have received it unduly."
These articles of the Code simply announce rules which, so far as we are aware, prevail uniformly in all jurisdictions. The trust, the very foundation stone of agency, would be meaningless unless these rules were applicable thereto. No agent has the right to barter his principal's goods, entrusted to him for sale or other disposition, at any price, and not account in full for his stewardship, unless by express agreement he is dispensed from so doing. Our own jurisprudence is replete with decisions which strictly uphold the principles embodied in said Codal articles. In Denson v. Stewart et al., 15 La. Ann. 456, the court held: "Where an agent, authorized to sell a thing for a particular price, sells it at a higher price, the surplus will belong to the principal, and the agent is entitled only to his stipulated commission."
It was held in Clement v. South Atlantic S. S. Line,128 La. 399, 54 So. 920, that: "An agent must account to his principal for whatever he has received, even unduly, by virtue of his procuration. An agent of a ship broker must restore to his principal all rebates or refunds received by him, in the absence of an express agreement to the contrary. Custom cannot prevail against the provisions of law."
To the same effect are: Chinn v. Chinn, 22 La. Ann. 599; Skannal v. Stevenson, 23 La. Ann. 755; Texana Oil Refining Co. v. Belchic, 150 La. 88, 90 So. 522.
The common law on the subject is not unlike our own. See: Restatement of the Law. Agency, §§ 403 and 407; 2 Am.Juris. 215, § 268; 13 A.L.R. 907.
The rule as expressed in American Jurisprudence, supra, reflecting the law of other states, reads: "It is well established that profits made and advantages gained by an agent in the execution of his agency belong to the principal, unless the parties themselves have otherwise agreed. In the absence of any agreement to the contrary between himself and his principal, an agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his services. He will not be allowed to speculate for his gain in the subject-matter of the employment. * * *".
Other cases and authorities could be cited but they would be merely cumulative of a rule about which there appears to be no dissent.
[7, 8] It is quite obvious that without the testimony of or an accounting from the plaintiff, defendant will be largely, if not wholly, unable to establish the true amount plaintiff is due it. He sought the aid of a court of justice to determine and enforce his rights against the defendant, yet he is unwilling to provide that court with information necessary to render a just decision. He is willing to take all that which the law accords to him, but is unwilling, because of the fear of incrimination, to divulge to the court facts indispensable to the ends of justice. He has not come into court with clean hands; he seeks equity but is unwilling to do equity. He sought an accounting from defendant and got it, but is not willing to render one himself.
This whole case, in reality, originally was for accountings. Such actions address themselves generally not only to the law side of the court, but as well to the equity side. 1 Am.Juris., verbo Accounts and Accounting, §§ 44 and 51.
It is certain that when and if plaintiff renders to defendant a true and correct account of his gestion as its agent, such account will disclose an indebtedness by him to the defendant, probably of many hundred dollars. The amount of this indebtedness and that admitted by defendant as due to plaintiff will automatically, pro tanto, operate as off-sets or compensation, the one against the other.
[9] Plaintiff urges his demand for payment of salary and commissions from date of his discharge, which, in his petition, he estimates at from $125 to $150 per week; and relies upon Act No. 150 of 1920, as amended by Act No. 138 of 1936.
The admission upon which judgment was rendered in plaintiff's favor does not include any part or portion of his salary. Plaintiff did not prove, in fact made no effort to prove, that any part of his salary was unpaid.
The above mentioned Act makes it the duty of an employer to pay to a discharged employee, on demand and within twenty-four hours after the discharge, the amount then due him under the terms of his employment; and provides further that if such *Page 70 
payment is not made within said time the employer shall be liable to the employee for his full wages from time of discharge until payment thereof is made.
We think the provisions of this Act have no application to the present case. It is true that when plaintiff was discharged defendant owed him a substantial amount on commission account. It is equally true that at the time plaintiff owed defendant a substantial amount, possibly more than was due him by defendant. Mutual accountings were necessary to determine who owed the greater amount. Ultimately, it may be revealed that plaintiff is defendant's debtor.
[10, 11] That the court below recognized defendant's equitable right to an accounting on the part of plaintiff is evidenced by the fact that its judgment ordered plaintiff to render an accounting to defendant within a period of thirty days. However, no penalty was provided for failure to obey such order, and, as a result, defendant in all probability may become the victim of a gross injustice. In urging its right to relief on appeal, defendant contends that this court should order execution of plaintiff's money judgment against defendant stayed until the accounting ordered by the judgment of the District Court has been duly made. While we fully appreciate the fact that such action on the part of this court would protect defendant's equitable rights in the premises, nevertheless, we are of the opinion that such action would not best serve the ends of justice. To order a stay of execution would mean simply that this action would be held in suspension or abeyance for an indeterminate period, and, further than that, it might still be possible for the plaintiff to render an incomplete account, which, from a technical standpoint, might be construed as compliance with such judgment.
Rather than take action which might serve only as a temporary solution or a partial determination, we choose to enter a judgment which will open the way to a final settlement of the equities existing between the parties to this litigation.
As we have pointed out, this plaintiff, in seeking the aid of the civil courts of the State, in order to compel an accounting in law and equity on the part of defendant, for the purpose of determining his rights, has subjected himself, certainly by implication, and by operation of the rules of equity, if in no other manner, to the obligation of rendering an account on his own part to the defendant. To permit plaintiff' to wrest an accounting from defendant under the guise of a civil proceeding at law, and to refuse defendant its concomitant right to an accounting from plaintiff, would be abhorrent and violative of all concepts of justice. It may be claimed that defendant's right to a separate action against plaintiff would still be preserved. In view of the fact that it is asserted and not denied that a money judgment against plaintiff would be worthless, and, in further consideration of the fact that pleas in compensation, counter-claim and set off are not only permitted but favored for the specific purpose, among others, of obviating a multiplicity of suits, we are firm in the opinion that it is the duty of this court to enter a judgment which will provide a means for a final determination of the rights of the respective parties.
For the reasons assigned, the judgment appealed from is set aside, and it is ordered that this cause be remanded to the First Judicial District Court in and for the Parish of Caddo, State of Louisiana, for further proceedings in accordance with this opinion. It is further ordered that plaintiff be, and he is hereby, ordered and commanded to render to defendant the accounting prayed for by defendant within a period of not more than thirty days from and after the date upon which this judgment shall become final, and, in the event of failure so to render such accounting within the period fixed, that plaintiff's suit shall be dismissed at his cost.
Plaintiff is taxed with the cost of this appeal. All other costs to await final determination of this suit. *Page 71