63 So.2d 615

**GLADNEY v. TRAHAN.**

No. 40697.

Feb. 16, 1953.

Fred G. Benton, Baton Rouge, for plaintiff-appellant.

Louis S. Prejean and Braxton B. Croom, Baton Rouge, for defendant-appellee.

MOISE, Justice.

Pearl Riley Hogan died intestate during the early part of 1941. Her succession was

opened by Frank W. Gladney, her Attorney. The petition alleges that Edward Riley, her father, and Emmett C. Riley, a brother, were her sole heirs; that her succession was solvent, and that there was no need of an administration. There was judgment putting the heirs in possession of the property left by the decedent. Edward Riley, the decedent's father, died on August 14, 1941. Emmett was then the sole heir of the two successions. Emmett died in May 1942. Frank W. Gladney, Attorney and Accountant, and his wife, Mrs. Sara Gary Gladney, had in their possession and control the funds of the three successions.

In 1944, the administrator, Joseph Sidney Trahan, brought suit against both Mr. and Mrs. Gladney for an accounting. Mrs. Gladney reconvened, praying for judgment in the sum of $4,900, with interest, on two notes which she alleged were due to her by the succession. On July 27, 1948, the trial court rendered judgment in favor of the plaintiff administrator in the amount of $2,025.46, with interest, against Frank Gladney, and in the amount of $6,342.10, with interest, against Mrs. Gladney. The reconventional demand was dismissed on the ground that Mrs. Gladney's claim was not proper in a suit for an accounting, and that she had not presented sufficient evidence to support her ownership of the notes. Her rights were reserved. On appeal, we affirmed this judgment. 217 La. 456, 46 So. 2d 734. The judgment against Mr. Gladney has been satisfied.

The basis of plaintiff's demand in the instant suit is the two above-mentioned mortgage notes—one for $2,400 dated April 3, 1939, with 8% interest and 10% attorney's fees, the other, $2,500, dated March 25, 1941, with 8% interest and 15% attorney's fees. The first note is signed by Mrs. Pearl Riley Hogan, and the second, by Edward Riley and Emmett Riley. The makers are now deceased, and Mrs. Gladney contends that she has come into possession of these notes by means of purchase. The $2,500 note was purchased from the brother of Mrs. Gladney, Norton Gary, who loaned the succession $2,500, *at the time the succession of the Rileys needed no funds.* The $2,400 note was purchased at a time when the holder was threatening to execute against the Riley succession. Mrs. Gladney brought an injunction suit to enjoin the execution of the judgment rendered against her in the prior suit, praying that that judgment be credited with the sum of $4,900, plus interest, and etc.

The trial court granted a preliminary injunction, and on trial of the merits awarded the plaintiff judgment in the sum of $4,900, with interest at the rate of 8% from July 27, 1948, the same to be compensated against the judgment rendered adversely to the plaintiff in suit No. 21,787 of the 19th Judicial District Court in and for the Parish of East Baton Rouge, in the sum of $6,342.10, with legal interest from July 27, 1948, until paid. The rule for a permanent injunction was made absolute only to the extent of the judgment.

From this judgment, the plaintiff appeals and asks that this Court recognize the full validity of the notes, in principal, interest and attorneys' fees, allowing compensation against the former judgment, and on the balance due, award her 8% interest from July 27, 1948, together with 10% attorneys' fees.

Defendant did not answer the appeal.

The perplexities of this record become the problems of the judge. In our previous opinion, 217 La. 456, 46 So.2d 734, we questioned the insufficiency of the proof as to the validity of the notes. Our learned brother below, with rigid imparti- ality, found that what is right is right. We, therefore, quote with approval his reasons for judgment:

"As to the $2500.00 note it is claimed that this money was needed to help pay succession debts and that it was bor- rowed from Mrs. Gladney's brother, Norton Gary, less a discount of $250.00. Thereafter, the note was acquired by Mrs. Gladney, which money she claims to have borrowed from the Fidelity Bank. It is also in evidence that she paid a note for $2400.00 held by one Emanuel Levy on about January 12, 1942, for which the administrator was liable.

"There can be no doubt that the $2400.00 note was a valid subsisting obligation of the succession, and had it not been paid there undoubtedly would have been a foreclosure of the

mortgage by which its payment was secured.

"As to the $2500.00 note, as was observed in the previous suit, there was apparently no necessity whatsoever for borrowing this money.

"However, the evidence fails to show that Mrs. Gladney did not purchase the note from Norton as she claims and as her husband claims.

"At any rate, in the computation of the liability of Wm. F. Gladney in suit No. 21,787 the administrator was given credit for the proceeds of this note, that is $2250.00. It could not therefore, now be said that the succession can escape the payment of the same, having de- rived the benefit of the money bor- rowed.

"On the trial of the suit No. 21,787, in which the liability of both W. Frank Gladney and his wife were determined, it was shown that consid- erable sums of money were collected from time to time for the account of the three successions involved, which sums were not credited as of the dates they were received on either of the note alleged to have been held by Mrs. Gladney, except perhaps on the Levy note, the interest on which was paid up to Apr. 3, 1941.

"Most assuredly if these collections were made, and they are evidenced by the judgments against both W. Frank

Gladney and Mrs. Sara Gary Gladney, they should have been applied to one or both of the notes as of the dates the various sums were received. They were not however so applied, and there is no satisfactory evidence to show the exact dates upon which all of these collections were made. It is therefore humanly impossible for this Court or anyone to say that the full amount of interest called for by the notes can be ascertained or recovered. Necessarily, if these collections had been credited as of the dates they were received, both interest and attorney's fees accumulating on the note would have been reduced. It is impossible also to say what amount represents 10% attorney's fees on one note and what amount represents 15% attorney's fees on the other. Certainly with money in their possession with which to pay these notes in full or in part, which was not done, it can not be said that it was ever necessary that either of them be placed in the hands of an attorney at law for collection. If the notes were past due and unpaid, making it necessary to place the same with an attorney at law for collection, the fault was not that of the administrator of the succession but was entirely that of Gladney and his wife. It would therefore be unjust and inequitable to allow them interest or attorney's fees, except from the date of the judgment rendered in this case

on July 27, 1948. The only equitable decision that can be made concerning the liability of the administrator to plaintiff is that plaintiff is the owner of the two notes aggregating $4900.00, and as such entitled to receive interest on the same from July 27, 1948, until paid. As of date July 27, 1951, this interest will be $1176.00, making a total of $6076.00, while on the other hand the judgment against plaintiff in the previous suit for $6342.10, with 5% interest from that date will aggregate as of July 27, 1951, the sum of $7293.40.

"Crediting plaintiff with $6076.00, there is left due the administrator by the plaintiff the sum of $1217.40.

"Settlement in accordance with the foregoing figures will in my opinion do substantial justice between the parties. I am also of the opinion that compensation or set-off should apply. See Foreman v. Pelican Stores, La. App., 21 So.2d 64, at page 70.

"The figures above given are intended merely as illustrative of the respective amounts that will be due by plaintiff and defendant to each other as of July 27, 1951.

"Judgment will therefore be signed fixing the liability of the administrator of the succession to plaintiff in the sum of $4900.00 with interest thereon at the rate of 8% per annum from July 27, 1948, until paid, the same to be com-

pensated against the judgment rendered against her in No. 21,787 of the docket of this court in the sum of $6,342.10, with legal interest from July 27, 1948, until paid.

"The rule to show cause why preliminary injunction should not issue enjoining the execution of the judgment rendered against the plaintiff in suit No. 21,787 of the docket of this court is made absolute only to the extent that said judgment shall first be credited with the sum of $4900.00, with interest thereon at the rate of 8% per annum from July 27, 1948, until paid, all costs of this suit to be paid by the plaintiff."

The judgment appealed from is affirmed. Plaintiff to pay the costs of this appeal.

McCALEB, J., concurs with written reasons.

FOURNET, C. J., absent.

McCALEB, Justice (concurring).

Under normal conditions, plaintiff would unquestionably be entitled to recover the interest and attorneys' fees provided for in the promissory notes. However, this case presents exceptional circumstances. Plaintiff invoked the equitable processes of the court and succeeded, erroneously I think, in obtaining an injunction staying execution of the judgment in favor of the succession until the legality of her claim on the promissory notes could be determined. Having sought equity she must do equity. Hence, she is not in a position to complain that the trial court settled the dispute by applying principles of natural justice.

I therefore concur in the majority opinion.