66 So.2d 339

**VILLEGAS et al. v. LATTER.**

No. 40991.

June 1, 1953.

Dart, Guidry & Price and Edward F. Wegmann, New Orleans, for plaintiffs and appellants.

Walter F. Marcus and Moise S. Steeg, Jr., New Orleans, for defendant-appellee.

McCALEB, Justice.

This suit was brought by a partnership known as International Export Company, and the individuals composing it, Albert A. Villegas and Ralph W. Fabacher, againt Harry Latter for $8,084.23 damages assertedly sustained from an alleged breach of contract of sale of substantially all of the furniture and furnishings contained in defendant's hotel building located on St. Charles Avenue in the city of New Orleans. The facts which give rise to the action are as follows:

In October of 1950, Latter entered into a long term lease of the Bienville Hotel to Pan-American Southern Corporation for use as an office building. In order to deliver possession on March 1, 1951, as provided in the lease, it was essential that he dispose of the furniture and furnishings which were then in use for hotel purposes. Accordingly, the contents of the 275 rooms were advertised for sale either as one item or in large or small lots. On February 12, 1951, plaintiff partnership, acting through Villegas, made a written offer to purchase the furnishings for $27,124.50 but this bid could not be accepted by Latter because it included the hotel rugs which had already been sold to another person. However, on the following day, Villegas made another offer of $21,000 for the furnishings, exclusive of the rugs, which was promptly accepted in writing by the general manager of the Bienville Hotel, acting for Latter. Also on that date (February 13, 1951), Latter, having been successful in cancelling the previous purchase order for the rugs, agreed to sell them to plaintiffs for $8,000 additional, making the total price $29,000, for which Villegas gave his check.

Immediately upon closing the deal with Latter, plaintiffs began selling the furniture and furnishings from the Bienville Hotel and conducted an extensive advertising campaign in the press and over the radio. However, difficulty was encountered in this selling project for, whereas Latter had no objection to the display and sale of the furniture from the hotel, he had bound himself to make delivery to his lessee, Pan-American Southern Corporation, by March 1, 1951 and, since the building was to be used to house a business, it was vital that the contractors for the lessee begin the reconversion work by moving walls, breaking plaster, removing doors, bath room and electric fixtures and the like, prior to occupancy. In fact, this work had already started at the time the sale to plaintiffs was consummated and, as it became more extensive, plaintiffs' operations on the premises were increasingly hindered. It is because of this alleged interference of the workmen that plaintiffs first item of damage is claimed.

It is their contention that Latter promised to allow them to use the hotel from February 13th until March 1, 1951 for the display and resale of the furniture. Latter flatly denies that he ever consented to such an arrangement, asserting that Villegas was distinctly told that plaintiffs would be required to remove the furniture as soon as possible and place it in a warehouse at 815 St. Charles Street, which he had agreed to make available to them, rent free for 30 days from February 12, 1951, and at a rental of $100 per month thereafter.

The other damages are said to arise from the action of the State Department of Health in requiring plaintiffs to disinfect upholstered furniture and bedding before offering them for resale to the public. It

is claimed that these damages were due to Latter's failure to sterilize the articles in compliance with Act 467 of 1948, LSA–R.S. 40:1191–40:1212.

After a protracted trial in the district court, there was judgment in defendant's favor dismissing plaintiffs' suit. Hence this appeal.

■ It is manifest from the foregoing that the case primarily presents for decision a question of fact. Villegas testifies that Latter agreed, at the time the contract was confected, to afford him the privilege of remaining on the hotel premises until the end of February for the purpose of reselling the furniture and other merchandise. His employee, one George C. Allen, corroborates his statement.

Latter contraverts this testimony declaring that it was understood that the furniture, etc. was to be moved out of the building as soon as possible. His statement is supported by the manager of the hotel, Mr. George Sturm, and, we think, by the correspondence had between the parties at the time the transaction was consummated.

The record shows that Latter wrote to Villegas on February 21, 1951 (8 days after the purchase), asserting that it had been clearly understood that the furniture would not be allowed to remain in the hotel for any fixed length of time and that Villegas was obliged to remove it as fast as possible to the warehouse at 815 St. Charles Street. In reply to this letter, Villegas merely stat-ed that Latter had agreed to give plaintiffs two weeks in which to remove the furniture and that it would be impossible to have all of it out of the building by the end of the week, February 24, 1951 (the deadline set by Latter in his letter). No mention is made in this letter of an agreement to permit plaintiffs to use the hotel premises for the display and resale of the furniture nor was complaint made that the workmen were interfering with them in the pursuit of that privilege. Indeed, it seems evident that no such understanding was ever had and that, if Villegas believed that he was to have the right he now claims, he never communicated it to Latter. This is plainly shown by Latter's letter of February 20, 1951 recognizing that an arrangement had been made between the parties for plaintiffs' free use of his building at 815 St. Charles Street for 30 days, beginning February 12, 1951 (the date of the original verbal agreement of sale) for the storage of the merchandise. This arrangement was confirmed in writing by Villegas.

■ Nor do we find an actionable basis for plaintiffs' other claim that they sustained damages by reason of Latter's failure to disinfect the upholstered furnishings and bedding as prescribed by Act 467 of 1948, LSA–R.S. 40:1191–40:1212. It is alleged that this damage occurred on March 1, 1951, at the time the second-hand furniture and furnishings were being offered to the general public; that the sale was stopped by the Board of Health be-

cause the merchandise had not been sterilized in accordance with law and that damages were sustained which are attributable to Latter's failure to comply with the statute.

The theory advanced by plaintiffs wholly disregards the fact that the sale was stopped because of their failure to sterilize the merchandise. Obviously, it affords no predicate for liability on the part of Latter to say that, if he had complied with the law, plaintiffs would not have been obliged to obey it—for the statute invoked by them, LSA–R.S. 40:1203, declares:

"*Persons* selling any article of bedding or upholstered furniture shall affix to the tag required by R.S. 40:1199 an adhesive inspection stamp prepared and issued by the state board of health". (Emphasis ours.)

And LSA–R.S. 40:1204 and 40:1208 prescribe that all persons required to affix stamps to articles shall apply to the State Board of Health and that the sale of articles of any untagged bedding and upholstered furniture is prohibited.

Thus, the statute, according to its language, applies to all sellers of bedding or upholstered furniture; it makes no distinction between public and private vendors or wholesalers and retailers.[1]

Latter, on the other hand, takes the position that it would be unreasonable to require both the wholesaler and retailer to disinfect the merchandise and he produced evidence that it was the custom of the trade to require only the retailer to comply with the law inasmuch as he sells to the general public, for whose protection the statute was passed.

Counsel for plaintiffs maintain that a custom contrary to law cannot be recognized, which is undoubtedly true.[2] However, acknowledgment of this avails the plaintiffs nothing because, if Latter violated the statute, so have they, in offering the merchandise for sale without proper sterilization, and it is their dereliction which is the immediate and proximate cause of their alleged damage. Liability for breach of contract extends to only such damages which have been sustained as a consequence of the default. Article 1930 of the LSA–Civil Code.

The judgment is affirmed.

1. Plaintiffs' witness, Mr. Charles C. Brown, Acting Director of the Bedding, and Upholstered Furniture Inspection Division of the State Board of Health, testified that the statute and the departmental regulations enacted pursuant thereto, applies to all persons selling second-hand furniture.

2. Mathé v. New Orleans Sugar-Shed Company, 1880, 32 La.Ann. 631; Meyer v. Vicksburg S. & P. R. Co., 1883, 35 La. Ann. 897; Moore & Sinnott v. Louisiana Nat. Bank, 1892, 44 La.Ann. 99, 10 So. 407; Clement v. South Atlantic S. S. Line, 1911, 128 La. 399, 54 So. 920.