242 So.2d 302 (1970)
Charles Wayne DAQUANO et al.
v.
Mrs. Edna Lee BRADY et al.
Charles Wayne DAQUANO et al.
v.
George A. BROOM et al.
Nos. 8158, 8159.
Court of Appeal of Louisiana, First Circuit.
December 21, 1970.
A. J. Spedale, of Spedale & Turner, Baton Rouge, for appellants.
James A. Piper, of Davis & Piper, W. S. McKenzie of Taylor, Porter, Brooks & Phillips, Charles H. Dameron, of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton *303 Rouge, Barranger, Barranger & Jones, Covington, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
LANDRY, Judge.
In these consolidated cases, Mr. and Mrs. Daquano appeal from judgments of the trial court rejecting Mrs. Daquano's claim in Suit Number 8158 for damages for mental anguish incident to the vandalizing of the Daquano residence, and rejecting Mr. Daquano's claim in Suit Number 8159 against the Sheriff of St. Tammany Parish and his insurer for alleged failure to timely record a writ of attachment against the defendants in Suit Number 8158.
In Suit Number 8158, the Daquanos sought recovery from Mrs. Edna Lee Brady and her daughter, Mrs. Billie Walsh, for $100.00 (the deductible portion of their insurance policy) for damage done to the Daquano residence shortly after its purchase from Mrs. Brady. Recovery in this amount was awarded against Mrs. Brady alone. Mrs. Daquano's claim for damages for mental pain and anguish was rejected on the finding that appellant had not produced sufficient proof thereof. We find that the trial court erred in rejecting Mrs. Daquano's claim and also erred in relieving Mrs. Walsh of liability. We also find that the trial court properly rejected Mr. Daquano's claims in Suit Number 8159 against George A. Broom, Sheriff, St. Tammany Parish, and his insurer, Western Surety. This finding obviates the need of our considering the third party demand of Sheriff Broom and his insurer against Mrs. Brady and Mrs. Walsh.
In December, 1966, plaintiffs purchased the Brady home for the sum of $19,000.00, which price included the drapes then in the residence. At Mrs. Brady's request, plaintiffs granted her permission to remain in the residence for approximately one week to enable Mrs. Brady to dispose of furniture and pack preparatory to moving. Prior to Mrs. Brady's departure, Mrs. Daquano visited the residence to inspect some furniture which Mrs. Brady desired to sell. On this occasion, Mrs. Daquano noted that the drapes previously in the home had been replaced with inferior drapes. Mrs. Daquano mentioned this circumstance to Mrs. Brady who made it clear to Mrs. Daquano that she intended to keep the better drapes. After leaving the premises, Mrs. Daquano consulted her attorney who advised stopping payment on a check given Mrs. Brady as part of the purchase price for the home. After being subsequently assured by Mrs. Brady's lawyer that the proper drapes would be made available to plaintiffs, payment of the check was authorized.
Neither Mrs. Brady nor Mrs. Walsh appeared as witnesses.
Within an hour or two after Mrs. Brady vacated the premises on the afternoon of December 7, 1966, Mrs. Daquano, a schoolteacher, accompanied by an associate, Janis Frosch, and a neighbor, Shelly Whitten, inspected the Daquano's new home. It appeared that an address sign had been ripped off the outside wall leaving holes; all curtain rods had been removed; drapes were nailed to the walls with tacks in all but one room; paint was splashed on the walls of the living room and bathroom; light fixtures were removed or broken; the front door mail slot was damaged; bars were removed from the kitchen window; a back yard clothes line was torn down; safety latches were removed from doors, paint was applied to the interior of the stove oven; and the sides were knocked out of a child's playhouse situated in the backyard. The character and extent of damage was also confirmed by Gordon G. St. Julien, adjuster for plaintiff's insurer.
Mrs. Shelley Whitten, a next door neighbor of the Bradys, testified that her bedroom window faces the Brady carport. On the night before Mrs. Brady moved out, Mrs. Whitten was awakened and kept awake virtually all night by what she considered unusually loud noises emanating from the *304 Brady home. She heard hammering and other noises all night long. She observed Mrs. Walsh in the back yard wielding a hatchet to knock the sides out of the playhouse and chop the clothes line wires. She also saw Mrs. Walsh set two or three trash fires on the rear lawn although a trash burning barrel was available. The following morning she observed Mrs. Brady carry the curtain rods out of the residence and place them in a car which drove up to the house. She testified that Mrs. Brady was a meticulous housekeeper and that she was amazed with the condition of the home when she saw it after Mrs. Brady moved out. Granted the evidence is circumstantial concerning whether Mrs. Walsh assisted in inflicting the interior damage. However, Mrs. Walsh was observed in the act of chopping the clothesline, damaging the playhouse and setting fires on the back lawn rather than using the available barrel incinerator. These circumstances, coupled with the fact that Mrs. Walsh was present throughout the night, amply support the conclusion that she aided and abetted her mother in vandalizing the residence.
It is well settled that damages are recoverable for mental anguish and humiliation resulting from damage to one's property. McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21; Hayward v. Carraway, La.App., 180 So.2d 758; Holmes v. LeCour Corp., La.App., 99 So.2d 467. We note that in Hayward, above, this court awarded damages for mental anguish precipitated by vandalism to plaintiff's historically significant ante-bellum plantation mansion.
In this instance plaintiff testified she was considerably upset because this was the first home she and her husband owned. She stated she was so distraught over the incident, she did not wish to live in the house. In addition, she stated the repair process delayed her occupancy for approximately two weeks. She became so depressed she consulted her minister because she felt she might be wrong in overreacting to the incident. Her apprehensions and discomfort continued to the point that about two months after the incident, she consulted a physician for relief from her upset emotional condition. Her testimony in this regard is corroborated by that of her husband.
It appears the trial court rejected Mrs. Daquano's demand because of her failure to call her minister and physician in corroboration, and not because of his disbelief of plaintiff's testimony on this issue. Depending upon the circumstances, plaintiff may establish his cause without corroborating testimony. Futrell v. Pacific Indemnity Company, La.App., 79 So.2d 903; Anderson v. Simmons, La.App., 75 So.2d 34. We note that in Hayward, above, we awarded similar damages solely upon plaintiff's testimony. Under the circumstances of this case, we readily appreciate that plaintiff would be considerably upset and discomforted by the incident. We feel that an award of $750.00 will amply compensate Mrs. Daquano for the mental anguish she endured.
Considering appellants' claim against Sheriff Broom, it appears that on October 16, 1967, said defendant received a writ of attachment directed against Mrs. Brady's property located in St. Tammany Parish. It is conceded the writ was not filed until October 25, 1967, because of failure to prepay filing fees pursuant to LSA-R.S. 13:3856. It is also shown that the writ was accompanied by a detailed letter of instruction from appellants' counsel expressly directing that the seizure be made pursuant to LSA-R.S. 13:3851 through R.S. 13:3861, which provides for constructive seizure of immovables by the mere filing of a notice of seizure with the Clerk of Court and service of notice upon the owner. Appellants urge that the delay in filing the notice with the Clerk of Court afforded Mrs. Brady opportunity to dispose of the property sought to be seized, thus depriving appellants of the security which seizure would have provided. It is contended the trial court erred in concluding that defendant Sheriff paid the Clerk, St. Tammany Parish, the filing fees as soon as possible under the *305 circumstances, and in not recognizing that the seizure could have been made pursuant to Section 13:3860, above, which the Sheriff was obligated to do. Alternatively, appellants maintain the Sheriff was under a duty to take affirmative steps to relieve the dilemma he created, especially because the Sheriff had reason to know that appellants were relying upon the Sheriff taking appropriate action in the matter.
LSA-R.S. 13:3856 expressly provides that the Sheriff is under no duty to make a seizure pursuant to LSA-R.S. 13:3851 through 13:3861 unless the seizing creditor pays in advance the filing fees to the Clerk of Court and the Sheriff.
In effect appellants contend defendant Sheriff customarily obtains filing fees by indiscriminately drawing upon funds deposited by attorneys with the Clerk of Court, St. Tammany Parish. It is further claimed that should a particular attorney have no funds on deposit, the fees would be paid from credits from another attorney's account, provided the attorneys involved were from the same parish. Therefore, according to appellants, the Sheriff cannot rely on Section 13:3856, above, in claiming the required fees were not paid in advance, when the practice in his parish is to pay such fees from the sources indicated. Appellants also note that payment on October 25, 1967 was from a credit standing in the name of an attorney from the same parish as counsel for appellants but which other attorney was not connected with this action. In essence, appellants contend the custom thus established in St. Tammany Parish should prevail over the statute and the required fees be considered prepaid by withdrawal from the funds mentioned.
The contention that the Sheriff had an affirmative duty to make the seizure under other methods of seizure authorized by law wherein no prepayment of fees is required is based on Section 13:3860 which states that the provisions of Sections 13:3851 through 13:3861 provide an additional method of seizure and that its terms do not prohibit actual seizure by the Sheriff and his appointment of a keeper, or otherwise.
Upon applying for the writ in question, counsel for appellants deposited $50.00 with the Clerk of Court, East Baton Rouge Parish, wherefrom the writ emanated.
Perry M. Johnson, Jr., Clerk of Court, East Baton Rouge Parish, testified that the writ was mailed to defendant Sheriff without the accompanying fees. He noted that if defendant Sheriff had forwarded a bill for the fees in question, they most probably would not have been paid by his office until the first of the following month. He explained that, to minimize accounting, statements from other Clerks and Sheriffs were kept until the end of the month and one check sent to cover all bills rendered.
Sheriff Broom's Chief Civil Deputy, J. L. Badon, testified his office files no writs unless the required fees are paid. He acknowledged receiving this particular writ at 2:16 P. M., October 16, 1967, unaccompanied by a remittance. Noting that counsel's letter of instructions requested the documents be returned to the Sheriff, East Baton Rouge Parish, he wrote said official for a remittance. Subsequently, on October 25, 1967, Mr. Badon utilized funds to the credit of an attorney unconnected with this matter to pay the fees demanded by the Clerk, St. Tammany Parish.
Robert Fitzmorris, Clerk of Court, St. Tammany Parish, testified that in no instance does he record documents until the necessary filing fees are paid.
Assuming, the existence of a custom as urged by appellants, custom cannot prevail in the face of positive law to the contrary. Clement v. South Atlantic S. S. Line, 128 La. 399, 54 So. 920; Succession of Rodosta, La.App., 144 So.2d 429. Under the plain terms of Section 13:3856, the Sheriff is not required to make a seizure under the pertinent statute until fees are paid by the seizing creditor. Here the fees were not paid by the seizing creditor or anyone else. That the Sheriff did ultimately *306 file the writ and pay the fees with funds belonging to other parties is a matter of no import because, under the circumstances, he was not required to file the documents at all.
We find no merit in the claim that the Sheriff should have, on authority of Section 13:3860, proceeded to seize the property under other seizure provisions which do not require prepayment of fees. The letter of appellants' counsel specifically instructed that the seizure be made pursuant to Sections 13:3851 through 13:3861. It may be reasonably presumed that counsel had good reason to choose this particular form of seizure. The selection of available methods properly rests within the discretion of counsel for the seizing litigant, not the Sheriff. The Sheriff's duty is to serve the writ issued by the court. We believe it would be manifestly unconscionable to require the Sheriff to expose himself to the risk attending his election, entirely on his own, of one of several available alternative procedures in instances of this nature. We are not disposed to impose such an awesome responsibility on a public official.
There is no proof of record that appellants were relying upon defendant Sheriff to do whatever was necessary to effect a seizure under some provision of law. On the contrary, we find that the specificity of counsel's instructions were such that any deviation therefrom would have been at the Sheriff's risk.
It is ordered, adjudged and decreed that the judgment of the trial court in Suit Number 8158 be and the same is hereby amended in that judgment is rendered therein in favor of plaintiff Charles Wayne Daquano and against defendants Edna Lee Brady and Billie Walsh, in solido, in the sum of ONE HUNDRED and No/100 ($100.00) DOLLARS, and in favor of plaintiff Dianne D. Daquano against defendants Edna Lee Brady and Billie Walsh, in solido, in the sum of SEVEN HUNDRED FIFTY and No/100 ($750.00) DOLLARS, with legal interest thereon from date of judicial demand, until paid.
It is further ordered, adjudged and decreed that the judgment of the trial court in Number 8159 be affirmed, all costs in both these consolidated proceedings to be paid by defendants Edna Lee Brady and Billie Walsh, in solido.
Amended and rendered.