## STANFIELD *v.* TUCKER, Executor.

Where a debtor transfers to his creditor the notes of a third person, bearing interest at ten per cent a year, for an amount exceeding his debt, to enable the creditor to pay himself,

STANFIELD
*v.*
TUCKER.

and the latter, finding on a settlement with the maker of the notes that he was entitled to credits which reduced the sum due below the amount of the notes, but left a balance exceeding the amount due by the transferrer of the notes, takes new notes from such third person, payable to himself, which are admitted to be good, for the whole balance due by him, bearing interest at ten per cent a year, the debtor will be entitled to recover from his creditor, by whom the new notes were taken, the amount by which the new notes exceeded the sum due to the creditor, supposing so much of the new notes to remain unpaid, with interest at ten per cent a year from their date; but in this case, the principal having adopted the novation, the agent must be allowed, if he choose, to give the unpaid new notes in payment *pro tanto*. *Aliter* in case the whole amount of the new notes had been collected, in which case the agent would be liable only for interest at five per cent a year on any balance due to the principal, from the time when it was actually collected. The mandate of the creditor was to collect the debt due by such third person, to pay himself out of the proceeds, and to account to his principal for the surplus. He violated the mandate by taking the new notes, and thus novating the debt. In consequence of this violation, the principal could either consider his creditor as having made the debt of such third person his own, and claim the surplus from him at once; or, he might adopt the transaction, and treat the notes as acquired for his benefit; and where there is nothing to show that the principal has done any act to deprive himself of the choice, the institution of an action against his debtor to recover the balance due him with interest at ten per cent a year from the date of the new notes, will be considered as an adoption of the novation. Art. 2984 C. C., which declares that "the attorney is answerable for the interest of any sum of money he has employed for his own use, from the time he has so employed it, and for that of any sum remaining in his hands, from the day he becomes a defaulter by delaying to pay it over," making the agent responsible only for *legal* interest, must be construed in connection with other principles of the law of agency, which declare that profits made by the agent, whether in the ordinary course of the business of the principal, or by a violation of his duty as agent, should belong to the principal. C. C 2974. [*Eustis*, C. J. and *Rost*, J., dissenting.]

Art. 2984 C. C. was enacted in the interest of the principal, and not to shield the unfaithful agent; and should be so construed as not to conflict with other rules adopted by the law in favor of the principal, and to secure strict good faith in the agent. [*Eustis*, C. J. and *Rost*, J., dissenting.]

APPEAL from the District Court of Lafourche Interior, *Burke*, J.
*S. L. Johnson*, for the appellant, *J. C. Beatty*, for the defendant.

The court being equally divided, the judgment of the lower court, under art. 68 of the constitution, is affirmed.

SLIDELL, J. *Stanfield* owed *Robinson* $10,000. To enable *Robinson* to pay himself, *Stanfield* transferred to him notes of *C. Aubert*, bearing ten per cent interest, amounting to about $17,000. On a settlement between *Robinson* and *Aubert*, it was found that *Aubert* was entitled to credits which reduced *Stanfield's* claim to $13,657 12, for which amount *Aubert* gave *Robinson* new notes, payable to *Robinson's* order, and bearing ten per cent interest from the date of the settlement, 1st April, 1842, until paid. A portion of these notes has been paid; some are yet unpaid, but are all considered good. The defendant admits that plaintiff is entitled to $3657 12; but contends that *Robinson's* estate can only be held to pay five per cent interest, from 1st April, 1842. The plaintiff asserts a right to ten per cent interest.

Under the assignment, it was the duty of *Robinson* to collect the debt due by *Aubert*, apply the fund to the payment of his own claim, and account to *Stanfield* for the surplus. *Robinson* was, therefore, a trustee for *Stanfield*. As such trustee, he stood towards him in the relation of agent to principal; and not the less so because his authority was coupled with an interest. *Stanfield* could not revoke the authority, without paying *Robinson*; but, on the other hand, the latter could do no act inconsistent with the mandate which he had accepted,

and the trust with which the fund was clothed. Keeping in view these relations of trustee and agent, the solution of the controversy is free from difficulty.

*Robinson's* mandate was to collect the debt from *Aubert.* He violated this mandate by taking the new notes of *Aubert,* and thus novating the debt. The right of *Stanfield,* by reason of this violation, was two fold: He could either consider *Robinson* as having made the *Aubert* debt his own, and claim the surplus at once from him; or, if he chose, adopt the transaction, and, treat the new notes as acquired for his benefit. There is nothing to show that *Stanfield,* or his representatives, did any act to deprive them of this choice. The present action, in my opinion, adopts the novation, and claims the benefit of it. I think, he is clearly entitled to it; for it is a benefit made from his own property.

It is true that our Code contains a provision that: "The attorney is answerable for the interest of any sum of money he has employed to his own use, from the time he has employed it; and for that of any sum remaining in his hands, from the day he becomes a defaulter, by delaying to pay it over." If the rights of the party are to be controlled exclusively by this article of the Code, it might be beyond our power to allow any thing more than five per cent interest, the *legal* interest there contemplated. But this article of the Code must be construed in connection with other principles of the law of agency. It was undoubtedly enacted in the interest of the principal, not to shield the unfaithful agent; and should not, therefore, conflict with other rules, adopted by the law in favor of the principal, and for the purpose of securing that strict good faith, which is exacted from him who stands in a situation of confidence with regard to another.

It is a familiar principle of the law of agency that, profits which are made by the agent, in the course of the business of the principal, belong to the latter. When the profits, says Mr. Story, are made by a violation of duty, it would be obviously unjust to allow the agent to reap the fruits of his own misconduct; and when the profits are made in the ordinary course of the business of the agency, it must be presumed that the parties intended that the principal should have the benefit. Treatise on Agency, § 207. In the same spirit our Code speaks: "He is bound to restore to his principal whatever he has received by virtue of his procuration, even should he have received it unduly." C. C. 2974.

It is true that cases might occur, where it would be impossible to ascertain and identify the profits made by the agent, by the use of his principal's money or other breach of duty; and, from the necessity of the case, the court would then be restricted to the mere allowance of interest. But where there has been such an appropriation of the trust property that it can be clearly and unequivocally identified, the change which it has undergone in point of form should not be permitted to frustrate the just pursuit of the principal, and put a profit into the pocket of the agent or trustee, at his expense. Bonæ fidei hoc congruit, ne de alieno lucrum sentiat.

But for what time are we to allow the ten per cent interest? The debt due by *Aubert* is the trust fund, which *Robinson* has had under his administration for the purposes contemplated in the agreement of the parties. This debt bore ten per cent interest. No part of it was paid before 1845, and a part is still unpaid. Ten per cent has been collected on what was paid; and will be collected on the residue, for the debt is admitted to be good. *Robinson* had a right to pay himself first, to the amount of $10,000; and as the defendant has not thought proper to furnish an account, it does not appear that there was, at the date of the suit, enough realized to leave a surplus after paying *Robinson's* claim. It was part of the agent's duty to render this account, and he must take the conse-

STANFIELD
v.
TUCKER.

quences of his silence. As a portion of the *Aubert* notes is still unpaid, and their amount is not shown, we will consider that amount as equivalent to the plaintiff's interest in the fund ; and as that fund will be collected, with ten per cent interest from 1842, it is right that the plaintiff should have interest from that date. If it had appeared that the entire fund had been collected by the trustee, before he was put in default, I should probably have allowed ten per cent interest down to the time at which it was actually collected from *Aubert*, and not more than five per cent thereafter.

As the plaintiff adopts the novation, the defendant must have the privilege of giving the unpaid notes of *Aubert* in payment, *pro tanto*, if he thinks proper to do so.

KING, J. I concur in the foregoing opinion read by Mr. Justice Slidell, and adopt the reasons which he has assigned.

ROST, J. It is stated in the opinion delivered by Mr. Justice Slidell, that *Robinson's* mandate was, to collect the debt from *Aubert;* and that he violated this mandate, by taking the new notes of *Aubert* and others, and novating the debt. That the right of *Stanfield*, by reason of this violation, was two fold : he could either consider *Robinson* as having made the *Aubert* debt his own, and claim the surplus at once from him ; or, if he chose, adopt the transaction, and treat the new notes as acqnired for his benefit; that there is nothing to show that *Stanfield*, or his representatives, ever did any act to deprive them of this choice ; and that the present action expressly adopts the novation, and claims the benefit of it.

I concede all this, except that the plaintiff is now claiming the benefit of the novation.

The benefit of a novation, is the immediate liability for the debt, with legal interest.

I admit that it is a familiar principle of the law of agency that, profits which are made by the agent in the execution of the mandate belong to the principal. But the profits claimed were made in violation of the mandate, not in execution of it, and the responsibility of *Robinson* is to be tested by other rules. After an express denial that *Robinson* acted as agent in novating the debt, he cannot be held responsible in that capacity.

I am of opinion that the judgment should be reversed, and judgment entered in favor of the plaintiff for the sum claimed, with interest at the rate of five per cent only.

EUSTIS, C. J. I concur in the foregoing opinion read by Mr. Justice Rost, and adopt the reasons which he has assigned.                    *Judgment affirmed.*[*]

---

[*] The judgment below allowed interest at ten per cent a year on the balance due to the plaintiff on the new notes from their date, charging her with the expense of their collection by suit.