## UNITED STATES v. RANDLE et al.

### No. 9558.

District Court, W. D. Louisiana, Opelousas Division.

Jan. 6, 1941.

Harvey G. Fields, U. S. Atty., and John A. Patin, Asst. U. S. Atty., both of Shreveport, La., for plaintiff.

Hugh M. Wilkinson, of New Orleans, La., for defendants.

DAWKINS, District Judge.

This case involves the charge, in substance, that the defendants used and conspired to use the mails in furtherance of a scheme to defraud, by making false election returns in a state primary election, including the denial to qualified persons of the right to vote, spoiling ballots and incorrectly counting and tabulating votes in favor of certain candidates and against opposition candidates. The mails were used in transmitting the alleged false and fraudulent returns to the Secretary of the State.

Defendants have demurred to the bill on the ground, in substance, that it does not state facts constituting a crime under the mail fraud statute. 18 U.S.C.A. § 338.

Defendants' brief was not received until the first of the year and there is not time to prepare an extended opinion. Much space has been devoted therein to a discussion of the provisions of the state primary law, the limited period of contests which can only be maintained upon a claim of having been nominated, and to the fact that the results are now final, in so far as the candidates are concerned. However, this memorandum will be devoted to the question of whether there was in the circumstances anything of value as to which anyone could be defrauded within the meaning of the statute.

The scheme did not have to be successful to the point of actually defrauding the parties intended to be defrauded so as to give them a cause of action against the schemers. It would have been sufficient if the intent to defraud of something of value existed and the mails were used in furtherance thereof. But in determining whether the scheme was one to defraud within the meaning of the statute, it is necessary to ascertain if the indictment states facts which show there was something of value of which the person named

760

could be defrauded. The state law gives to qualified persons the right to seek nomination to public office and prescribes how it shall be accomplished with appropriate remedies for contests and ascertaining whether it has been won. The question is whether this right comes within the mail fraud statute. If so, then it would not be necessary, as in case of maintaining a contest of the nomination, to show that the scheme had succeeded to the extent of affecting enough votes, which, if properly cast and counted, for the person to be defrauded, would have insured his election. The intent and purpose being to that end would be sufficient.

■ The mail fraud statute is not dependent upon state law in the sense that what is done should also be a crime thereunder. It is conceivable that such a scheme and intent to defraud could exist with respect to matters entirely lacking in criminal responsibility under state law. Primary elections merely entitle the successful participant to become the candidate of his party in the ensuing general election, in which he may or may not be successful. In this sense, it is a civil or political right recognized by state law in the absence of which it would not exist. Can it be said, therefore, that because the state has created it, subject to restricted methods of contest and ascertainment, it has such tangible value that a scheme to deprive one thereof amounts to a fraud within the mail fraud statute? If so, what is the gauge by which this value may be measured? Of course, the question of whether it was great or small would not matter so long as there was some criterion by which it could be measured or fixed. Many rights, both under state and federal law, can be imagined for which schemes to deprive the possessor may be conceived. A few may be suggested for purpose of illustration: During the years and periods of registration for voting, registrars go or send their deputies into rural sections of their parishes for the purpose of registering voters. If they, under the law requiring the applicant to give an understandable interpretation of the Constitution, arbitrarily refused to register an individual and then should send the list of those permitted to register through the mails to the central office with certificate that they embrace all those applying, who were entitled to register, deliberately omitting someone who were qualified, from which the eligible list of voters were to be furnished to election commissioners, the effect would be to deprive the individuals so discriminated against of the right to vote. In these circumstances, if in bad faith, there would undoubtedly exist a scheme to defraud such persons of the right to vote, and while not required to transmit the list through the mails, they would in fact have been used in consummating it, which under the present law is sufficient, it not being a necessary part of the scheme that the mails were intended to be used but only that they are actually used. Again, if a peace officer, such as a sheriff, should falsely obtain a warrant for the arrest of persons attempting to gather in a peaceable assembly and for the purpose of preventing the exercise of this constitutional right, but on the pretense that the persons charged were disturbing the peace and the warrant should be sent through the mails to be executed, the constitutional right of peaceable assembly would have been prevented by the fraudulent scheme. It would be going a long way and I think far beyond the purport of the law to say that the perpetrator would be guilty of violating the mail fraud statute. Other illustrations may be conceived in which persons could be deprived of political or civil rights and the mails used for consummation.

■ The sovereign and public generally have no property right in the selection of officers of which it or they may be deprived by misconduct, even in general elections. United States v. Gradwell, 243 U.S. 476, 37 S.Ct. 407, 61 L.Ed. 857; United States v. Bathgate, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676. The matter therefore comes down at last to the point as to whether the individual candidates, against whom the frauds are alleged to have been committed, were deprived or intended to be deprived and the successful candidates received or were intended to receive something which could be said to have had a value within the meaning of the law. I shall not go into a discussion of states' rights and the possibility of interfering with primary elections by the Federal Government, but think it sufficient to say that it must be shown by the alleged scheme that the persons to be defrauded were or could have been deprived of moneys or property of some value other than mere civil or political rights. See Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968.

As to the emoluments, the offices when elected, as to which it is alleged the intent was to deprive one group and secure for the other, the possibilities were remote or secondary and dependent upon the results of the general election. Of course, it is common knowledge in Louisiana that the Democratic nomination is equivalent to election. But the supposed value can not be based on that incidental or accidental fact. It is not so in other states, where political thought is more evenly divided, and to say for that reason alone, the mail fraud statute could be violated here but not in such other states, would of course, reduce the matter to an absurdity.

My conclusion is that the demurrer should be and it is accordingly sustained.

Proper decree should be presented.