**UNITED STATES of America**

v.

**Christian FASER, Jr.**

**Crim. No. 1826.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.
Aug. 21, 1969.

Louis C. LaCour, U. S. Atty., Eastern District of Louisiana, Owen A. Neff, Sp. Asst. U. S. Atty., New Orleans, La., for United States of America.

Rolfe H. McCollister, McCollister, Belcher, McCleary & Fazio, Baton Rouge, La., Sam J. D'Amico, D'Amico, Curet & Bush, Baton Rouge, La., John L. Avant, Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, La., for defendant.

WEST, Chief Judge:

Defendant, Christian Faser, Jr., was charged by a Federal Grand Jury on March 28, 1969, in a five count indictment with violating the Mail Fraud Statute, Title 18, United States Code, Section 1341. He now moves this Court to dismiss the indictment on the ground that it fails to state an offense for which he can be held to answer under the provisions of that statute. After hearing arguments of counsel, and after studying the exhaustive briefs filed and after reviewing the law applicable hereto, this Court concludes that there is no merit to defendant's motion to dismiss, and concludes that the indictment returned against the defendant on March 28, 1969, should not be dismissed.

Title 18, United States Code, Section 1341 provides, in pertinent part, as follows:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined * * *."

The alleged violation of this statute by the defendant is predicated on the following assertions contained in the indictment. Count One purports to charge a conspiracy within the meaning of Title 18, United States Code, Section 371, to commit a violation of the above quoted statute. In support of that charge, the indictment says:

"5. It was a part of said conspiracy that the defendant and the named co-conspirators would devise and intend to devise a scheme and artifice to defraud the State of Louisiana, that is to say, the said defendant, CHRISTIAN FASER, JR., and co-conspirators Ezekial W. Gravolet, Jr. and Numa P. Himbert would, while acting in their official capacities with the State of Louisiana, accept monies and bribes in return for causing public funds of the State of Louisiana to be deposited in the First National Bank of Jefferson Parish, Gretna, Louisiana, and would use their positions of public trust for the purpose of realizing private financial gain from the deposit of said public funds of the State of Louisiana, thus depriving the State of Louisiana of the honest and faithful performance of their duties as public officials, and would, for the purpose of executing such scheme and artifice and for the purpose of attempting to execute such scheme and artifice knowingly place and cause to be placed in authorized depositories for mail matter of the United States Post Office Department, checks, bank statements, and other matters and things to be sent and delivered by the Post Office Department between Baton Rouge, Louisiana, and Gretna, Louisiana; between Gretna, Louisiana, and New Orleans, Louisiana; between Gretna, Louisiana, and Baton Rouge, Louisiana; and between New Orleans, Louisiana, and Pointe-a-la-Hache, Louisiana, and would knowingly take and cause to be taken and received from the United States mails,

checks, bank statements, and other matters and things, at Baton Rouge, Louisiana, at Gretna, Louisiana, at New Orleans, Louisiana, and at Pointe-a-la-Hache, Louisiana."

The remaining allegations of Count One charged that a co-conspirator, one Ezekiel W. Gravolet, Jr., who was at the time a member of the Louisiana Legislature, was to enter into a contractual arrangement with the First National Bank of Jefferson Parish, Gretna, Louisiana, whereby he would be employed to solicit deposits for the bank. The said Gravolet was to receive payment from the First National Bank of Jefferson Parish for securing deposits for the bank. Defendant, Christian Faser, Jr., who was employed at the time as Executive Secretary to the Governor of the State of Louisiana, and his two alleged co-conspirators, Gravolet and one Numa P. Himbert, who was employed by the Department of Highways for the State of Louisiana, were to cause public funds of the State of Louisiana to be deposited by mail in the First National Bank of Jefferson Parish. Gravolet was then to form or cause to be formed three Louisiana corporations ostensibly for the purpose of engaging in public relations business, the stock of which three corporations was to be owned by the wives of the defendant, Gravolet, and Himbert. It is then charged that Gravolet was to cause the First National Bank of Jefferson Parish to deposit a portion of the funds payable to him under his contract to obtain deposits to the accounts of each of the three corporations, thus utilizing the three corporations to "disguise bribe payments" to defendant and Himbert in return for the bank receiving the deposits of State highway funds. As overt acts under Count One it is charged that on or about May 31, 1960, Himbert, acting under instructions from the defendant Faser, caused a deposit of Highway Department funds in the amount of $3,000,000 to be mailed from Baton Rouge, Louisiana, to the First National Bank of Jefferson Parish; that on or about June 1, 1960, Gravolet entered into a contract of employment with the First National Bank of Jefferson Parish; that between January 2, 1961 and July 16, 1962, Gravolet formed the three corporations hereinabove referred to; that between June 1, 1960 and July 31, 1964, the First National Bank of Jefferson Parish paid commissions to Gravolet in the amount of approximately $491,033.38, and that between December, 1961 and July, 1964, Himbert received payments from the "public relations" corporations totaling approximately $55,790, while the defendant Faser, between September, 1960 and July, 1964, received payments from one of those corporations totaling approximately $64,903.34. The remaining overt acts alleged pertain to specific instances where the defendant allegedly caused the Baker Bank and Trust Company of Baker, Louisiana to place in the mails for collection certain specific checks drawn to the order of his wife on the account of one of the corporations hereinabove referred to.

Counts Two through Five of the indictment allege essentially the same facts as alleged in Count One and charge the defendant with actual violation of Title 18, United States Code, Section 1341, as distinguished from the conspiracy charged in Count One.

■ The Government contends that the facts alleged are sufficient to sustain a charge of conspiracy to use the mails to defraud as contained in Count One, and a charge of actually using the mails to defraud as charged in Counts Two through Five. The Government bases its case on the allegation in the indictment that the actions of the defendant Faser and his alleged co-conspirators "deprive the State of Louisiana of the honest and faithful performance of their duties as public officials" and that the allegations that the United States mails were used in furtherance thereof, are sufficient, if proved, to constitute the crime of using the mails to defraud under Title 18, United States Code, Section 1341. The defendant, on the other hand, contends,

inter alia, that the facts as alleged, even if proved, do not constitute fraud and that therefore no Federal crime has been charged. It is the position of the defendant that the indictment fails to allege facts which could be construed as a "scheme or artifice to defraud" as contemplated by Title 18, Section 1341, United States Code, because there is no allegation that the State of Louisiana was in any way defrauded out of any "money or property" or "anything of value which could be measured in terms of money or property." It is the contention of the defendant that in order to be valid, the indictment must specifically allege that there was an intent to defraud or that someone was actually defrauded out of something tangible that can be measured in terms of money or property. While in view of the language used in United States v. Procter and Gamble Company, 47 F.Supp. 676 (D.C.Mass.—1942) and Blachly v. United States, 380 F.2d 665 (CA 5—1967), this Court has grave doubts as to the necessity of an indictment under the statute in question alleging that the fraud charged involved the deprivation of "money or property" or "something of value which is susceptible of measurement in terms of money or property," under the facts alleged in this particular indictment, a determination of that issue is unnecessary. Failure to allege the statutory elements will not be fatal provided alternative language is used or that the essential elements are charged in the indictment by necessary implication. The indictment should be read as a whole and interpreted in a common sense manner. 8 Moore's Federal Practice § 7.04, pp. 7–14 and 7–19. This indictment, contrary to the contentions of the defendant, does allege, both by its terms and by implication, the defrauding of the State of Louisiana out of something of value which can indeed be measured in terms of money. The indictment alleges that the defendant was an agent of the State of Louisiana, being employed at the time as Executive Secretary to the Governor of the State. It alleges that while so employed he unlawfully, willfully and knowingly engaged in a scheme and artifice to defraud the State of Louisiana by accepting monies and bribes in return for causing public funds of the State of Louisiana to be deposited in a certain bank and that he used his position of public trust for the purpose of realizing private financial gain by use of these public funds. The indictment charges that the amount of this private financial gain to the defendant was the sum of $64,903.34. It is settled beyond question that an agent who makes a profit from the business conducted by him on account of his principal has a duty to the principal to account for such profit. Restatement of Agency 2d § 403. Speaking on the same subject, Article 3005 of the Louisiana Revised Civil Code provides:

"He is bound to restore to his principal whatever he has received by virtue of his procuration, *even should he have received it unduly.*" (Emphasis added.)

As early as 1849, in the case of Stanfield v. Tucker, 4 La.Ann. 413, the Louisiana Supreme Court said:

"It is a familiar principle of the law of agency that, profits which are made by the agent, in the course of the business of the principal, belong to the latter. When the profits, says Mr. Story, are made by violation of duty, it would be obviously unjust to allow the agent to reap the fruits of his own misconduct; and when the profits are made in the ordinary course of the business of the agency, it must be presumed that the parties intended that the principal should have the benefit."

Again, in the case of Clement v. South Atlantic S.S. Line, 128 La. 399, 54 So. 920 (1911), the Court, referring to Louisiana Civil Code Article 3005, said:

"An agent must account to his principal for whatever he has received, even unduly, by virtue of his procuration. An agent of a ship broker must restore to his principal all rebates or refunds received by him, in the absence of an express agreement to the contrary."

And in Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522, 527 (1922), it was stated thusly:

"He [the agent] will be required to account to his employer for any gift, gratuity, or benefit received by him in violation of his duty, or any interest acquired adverse to his principal without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise. 21 R.C.L. 825 § 10."

See also Foreman v. Pelican Stores, La. App., 21 So.2d 64, and United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769, 19 Ann.Cas. 594. This principle of law is summed up as follows in 3 Am.Jur.2d § 223:

"It is well established that profits made and advantages gained by an agent in the execution of his agency belong to the principal unless the parties themselves have otherwise agreed. In the absence of any agreement to the contrary between himself and his principal, an agent is not entitled to avail himself of any advantage that his position may give him to profit at his employer's expense beyond the agreed compensation for his services."

The defendant says that the indictment fails to state that the State of Louisiana lost money or property as a result of his actions. This is simply not so because the indictment does charge specifically that the defendant engaged in a scheme or artifice which resulted in his receiving $64,903.34 while he was acting as an agent of the State of Louisiana. As stated above, under the law, what is received by an agent is the property of his principal, unless there is an express agreement to the contrary. Thus, by implication, if not by direct terms, the indictment does charge that the State of Louisiana was defrauded out of $64,903.34. State v. Hagerty, 251 La. 477, 205 So.2d 369 (1968).

But even if this were not so, as stated previously, this Court does not believe that it is necessary that actual loss be shown in order to find an intent to defraud. As the Court said in Shushan v. United States, 117 F.2d at 110 at 119, 133 A.L.R. 1040:

"It is not true that because the Board was to make and did make a saving by the operations there could not have been an intent to defraud. The great demand for tax exempt bonds and the fall in interest rates on them, gave a potential profit to the Levee Board in refunding its callable bonds which bore a high rate of interest. That potential profit, all of it, was the property of the Board. These defendants had no original right to any of it."

By analogy, the same can be said in the present case. The fact that the State, at that time, was apparently not receiving interest on its bank deposits, is of no moment. There was nothing in the law to prevent the State from receiving interest, and, if the charges in this indictment are true, there can be little doubt of the fact that there was a very real and substantial potential profit available to the State if and when it chose to avail itself of it. State v. Hagerty, supra. The defendant, as an agent of the State, had no right to avail himself of such profit without a specific agreement with his principal allowing him to do so. Thus, if he received and kept a profit derived from the deposit of State funds, he kept something that, under the law, belonged to the State, thus depriving the State of a very real potential profit. It is thus the opinion of this Court that the indictment does, in fact, and by necessary inference, charge the defendant with defrauding the State of Louisiana out of actual cash money. But even if that were not so, it is further the opinion of this Court that the thing out of which it is charged the State was defrauded need not necessarily be that which can be measured in terms of money or property. It is the opinion of this Court that it is a violation of the statute in question if a person defrauds the State out of the "loyal and faithful services of an employee." As Judge Brown

said in Blachly v. United States, 380 F. 2d 665 (1967):

"The crime of mail fraud is board (sic) in scope. (citing cases.) The fraudulent aspect of the scheme to 'defraud' is measured by a nontechnical standard. Gregory v. United States, supra, [5 Cir.] 253 F.2d 104 at 109. Law puts its imprimatur on the accepted moral standards and condemns conduct which fails to match the 'reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society.' * * * The deceitful concealment of material facts may also constitute actual fraud. Gusow v. United States, supra, [10 Cir.] 347 F.2d [755] at 756; Cacy v. United States, 9 Cir., 1961, 298 F.2d 227, 229. This then is but another circumstance which the jury could consider in arriving at a determination of whether the scheme as a whole was fraudulent within the statutory meaning."

As was said in Foshay v. United States, 8 Cir., 68 F.2d 205, 211 (1933):

"To try to delimit 'fraud' by definition would tend to reward subtle and ingenious circumvention and is not done."

Thus it seems quite clear that even if the thing out of which the State was allegedly defrauded was not susceptible of measurement in terms of money or physical property, a valid indictment may still result therefrom. It is therefore the opinion of this Court that first, because the indictment in question does, both by its terms and by reasonable and necessary inferences to be drawn therefrom, properly charge that the defendant did, by fraud and artifice, deprive the State of Louisiana out of actual money, and secondly, because the indictment does, by direct terms, charge the defendant with fraudulently depriving the State of Louisiana of the "honest and faithful performance of their duties as public officials," the indictment involved does, in fact, set forth a criminal charge for

which the defendant must be held to answer, and therefore, defendant's motion to dismiss the indictment must, and will be, denied.