362 F.Supp. 1293 (1973)
UNITED STATES of America, Plaintiff,
v.
Isaac STATES et al., Defendants.
No. 72 Cr. 322 (3).
United States District Court, E. D. Missouri, E. D.
February 12, 1973.
*1294 Daniel Bartlett, Jr., U. S. Atty., and David Harlan, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.
Murry L. Randall, St. Louis, Mo., for defendant States.
Morgan, Darris & McCoy, James A. Bell, St. Louis, Mo., for defendants Morgan.
Paul L. Dobberstein, Jr., St. Louis, Mo., for defendant Thomas.
Robert A. Hampe, St. Louis, Mo., for defendant Dotson.
Wm. C. Dale, Jr., Clayton, Mo., for defendant Fowler.
Paul M. Denk, St. Louis, Mo., for defendant Armstrong.
Wm. E. Brand, Jr., St. Louis, Mo., for defendant Jones.

MEMORANDUM
WEBSTER, District Judge.
On February 5, 1973 the court denied separate motions of all defendants to dismiss the indictment for failure to state an offense against the United States. This Memorandum sets forth the basis for that order.
The defendants stand indicted of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 and conspiracy in violation of 18 U.S.C. § 371. The indictment charges that the defendants devised a scheme to defraud the voters and residents of the third and nineteenth wards of the City of St. Louis and the Board of Election Commissioners of the City of St. Louis by the use of fraudulent voter registrations and applications for absentee ballots. It is alleged that the purpose of the scheme to defraud was to influence the outcome of the election of the Republican Committeeman for the nineteenth ward and the Democratic Committeeman for the third ward "for the purpose of securing and controlling said political offices and the political influence and financial benefits of said offices . . . ." It is further alleged that as part of the scheme to defraud, the defendants submitted false and fraudulent voter registration affidavits bearing the names of false and fictitious persons with false addresses and caused the St. Louis Board of Election Commissioners to place absentee ballots for the fictitious persons in an authorized depository for mail matter.
Count One charges a conspiracy to commit an offense in violation of 18 U. S.C. § 1341 and 18 U.S.C. § 1342, which is an offense under 18 U.S.C. § 371. The remaining 136 counts charged substantive violations of either § 1341 or § 1342. The conspiracy count does not rely upon the clause in § 371 which makes it an offense to conspire to defraud the United States. Thus, all of the counts of the indictment have one common and essential element with respect to the offense alleged in each count: the devising of a scheme or artifice to defraud. If the scheme allegedto cause false and fraudulent absentee ballots to be counted in a primary election in order to control the offices of two ward committeemenis not a "scheme or artifice to defraud" within the meaning of 18 U.S.C. § 1341, then the government will have failed to state an offense under *1295 any of the counts of the indictment, and the indictment must be dismissed.
As was said by Justice Holmes long ago:
"The overt act of putting a letter into the postoffice of the United States is a matter that Congress may regulate. Ex parte Jackson, 96 U.S. 727, 24 L. Ed. 877. Whatever the limits to the power, it may forbid any such acts done in furtherance of a scheme that it regards as contrary to public policy, whether it can forbid the scheme or not. [citations omitted]." Badders v. United States, 240 U.S. 391, 393, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916). Title 18 U.S.C. § 1341 provides:
"§ 1341. Frauds and swindles
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."
The burden of defendants' motion is that the indictment does not state a violation of § 1341 because there is no allegation that anyone was defrauded of money or property. The principal case cited in support of defendants' argument is United States v. Randle, 39 F.Supp. 759 (W.D.La.1941) which in turn relies on United States v. Gradwell, 243 U.S. 476, 37 S.Ct. 407, 61 L.Ed. 857 (1917), United States v. Bathgate, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676 (1918) and Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968 (1924). In Randle, it was charged that the defendants in violation of 18 U.S.C. § 338, the forerunner of 18 U.S.C. § 1341, devised a scheme to defraud by making false election returns in a state primary, spoiling and incorrectly counting ballots and using the mails as part of that scheme. The court sustained a demurrer to the indictment, holding:
"[I]t must be shown by the alleged scheme that the persons to be defrauded were or could have been deprived of moneys or property of some value other than mere civil or political rights. See Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968.
* * * * * *
"The sovereign and public generally have no property right in the selection of officers of which it or they may be deprived by misconduct, even in general elections. United States v. Gradwell, 243 U.S. 476, 37 S.Ct. 407, 61 L. Ed. 857; United States v. Bathgate, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676."
39 F.Supp. at 760.
With due respect, the decisions relied upon do not support the result in Randle, nor do they support the contention of defendants in this case. Both Gradwell and Bathgate involved as a basis for federal jurisdiction the bribery of voters in state elections. Gradwell held that such conspiracies were not conspiracies to defraud the United States under the general conspiracy offense charged. Both Gradwell and Bathgate held that Section 19 of the criminal code, which applied to certain conspiracies against the elective franchise, did not apply to bribery of voters. Neither case dealt with the applicability of the mail fraud statutes. Hammerschmidt, also cited in *1296 Randle, dealt with an alleged violation of the Selective Service Act. In distinguishing a mail fraud case, Horman v. United States, 116 F. 350 (6th Cir. 1902) the Supreme Court said that the offense under the mail fraud statute should be confined to "pecuniary or property injury inflicted by a scheme to use the mails for the purpose." In relation to the instant case, this statement must be regarded as dictum, for it was not required to, nor did it come to grips with the alternative mail fraud schemes proscribed under the statute: "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . . ." 18 U. S.C. § 1341 (emphasis supplied). The disjunctive character of the clause has long been recognized. See United States v. Young, 232 U.S 155, 34 S.Ct. 303, 58 L.Ed. 548 (1914).
Consistent with the construction of the word "defraud", as used in § 1341, as not necessarily limited to schemes to obtain money or property, is the language of the court in United States v. Procter & Gamble Co.:
"Broadly, `fraud' has been defined as `any artifice whereby he who practises it gains, or attempts to gain, some undue advantage to himself, or to work some wrong or do some injury to another, by means of a representation which he knows to be false, or of an act which he knows to be against right or in violation of some positive duty.' Commonwealth v. Tuckerman, 10 Gray, Mass., 173, 203, cited with approval in Commonwealth v. O'Brien, 305 Mass. 393, 397, 398, 26 N.E.2d 235. But, as was stated in Foshay v. United States, 8 Cir., 68 F.2d 205, 211: `To try to delimit "fraud" by definition would tend to reward subtle and ingenious circumvention and is not done.'"
47 F.Supp. 676, 678 (D.Mass.1942).
See also the language of the court in Blachly v. United States:
"The crime of mail fraud is broad in scope. . . . The fraudulent aspect of the scheme to `defraud' is measured by a nontechnical standard. . . . [The] [l]aw puts its imprimatur on the accepted moral standards and condemns conduct which fails to match the `reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society.' . . . This is indeed broad. For as Judge Holmes once observed, `[t]he law does not define fraud; it needs no definition; it is as old as falsehood and as versable as human ingenuity.'"
380 F.2d 665, 671 (5th Cir. 1967); and see Abbott v. United States, 329 F.2d 310, 314 (5th Cir. 1956).
It may be argued that the scheme or artifice to defraud referred to in § 1341 is at least limited to situations where one is deprived of something of value, albeit not capable of translation into terms of money. Under our form of government, however, it could hardly be contended that the right to have one's vote counted, undiluted by fraudulent absentee ballots, is without value. Cf. United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).
At least one other court has reached the same conclusion. In United States v. Classic, 35 F.Supp. 457 (E.D.La. 1940), the court overruled a demurrer to an indictment under the mail fraud statute for a scheme to defraud in connection with a primary election. The court stated:
"The mail fraud statute denounces the use of the mails, in the actual, or attempted, execution of any devised scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, and the counts 5 and 6 of the indictment herein properly charge the statute's violation."
* * * * * *

*1297 "The unlawful act of the [primary election] commissioners in the alleged devising of the scheme to defraud and in thereafter using the mails in the execution thereof is the subject of congressional regulation."
"Congress definitely intends that the misuse of the mails shall be controlled even though it be its policy to leave the control of elections to the several States."

Id. at 458.[1]
Any argument to the effect that these defendants should not be prosecuted under the mail fraud statute, 18 U.S.C. § 1341, because Congress has not clearly shown that it intends to regulate the conduct of elections for Committeemen is simply irrelevant.
In this court's opinion, the conclusion of the District Court in United States v. Classic, supra, and the authorities relied upon therein, in contrast with United States v. Randle, correctly anticipate the view of the Supreme Court with respect to applicability of federal mail fraud to ballot stuffing schemes in state elections.[2]
A scheme to obtain and vote absentee ballots in Missouri by means of false applications necessarily contemplates the use of the mails as an integral part of that scheme, because ballots which are not voted at the Board of Election Commissioners' office must be sent to the prospective voter by certified mail. § 112.030 V.A.M.S. Once the ballots were delivered into the hands of those who are charged with fraudulently obtaining them, they could be completed en masse without the risks attendant upon personal appearances at the Board. Use of the mails, under the scheme charged in the indictment, was thus intended to carry out an essential step in the execution of the scheme.
The essential elements of the offense under 18 U.S.C. § 1341 may be easily gleaned from the statute: the act of having devised or intended to devise a scheme or artifice to defraud; the act of placing or causing to be placed in an authorized depository for mail matter a letter intended to be sent or delivered by the post office; and the willful use of the mails with the specific intent to carry out some essential step in the exeuction of the scheme or artifice to defraud. See Devitt & Blackmar, Federal Jury Practice and Instructions, § 40.05, at 506-07. The court concludes that the indictment properly charges a scheme or artifice to defraud as those terms are used in 18 U.S.C. § 1341, and also charges the other essential elements of the offense in sufficient detail.
NOTES
[1] In United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), the Supreme Court held that the lower court had erred in sustaining a demurrer to counts 1-4 of an indictment which charged violations of §§ 19 and 20 of the Criminal Code, 18 U.S.C. §§ 51 and 52. United States v. Classic, 35 F.Supp. 457 (E.D.La. 1940) involved counts 5 and 6 of that same indictment and charged violations of the mail fraud statute then in force. (18 U.S. C. § 338).
[2] In so holding, it is not necessary to anticipate a change in the Supreme Court's distinction between bribery and ballot stuffing. See United States v. Saylor, supra, 322 U.S. at 389, 64 S.Ct. 1101. While care should be taken not to extend the mail fraud statutes beyond the limits intended by Congress, see United States v. Kelem, 416 F.2d 346 (9th Cir. 1969), cert. denied 397 U.S. 952, 90 S. Ct. 977, 25 L.Ed.2d 134, it cannot be said that Congress intended to exclude from prosecution the willful use of the mails to accomplish a scheme to defraud voters by dilution of their franchise. It is the misuse of the mails which Congress has chosen to regulate, and the scheme to defraud as alleged in the indictment is an artifice or scheme to defraud within the meaning of the statute (18 U.S.C. § 1341).