UNITED STATES of America,
Appellee,

v.

Isaac STATES, Appellant.

UNITED STATES of America,
Appellee,

v.

Michael McCOY, Appellant.

UNITED STATES of America,
Appellee,

v.

Robert MORGAN, Appellant.

Nos. 73–1253, 73–1214, 73–1244.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1973.

Decided Dec. 5, 1973.

Murry L. Randall, St. Louis, Mo., for Isaac States.

James A. Bell, St. Louis, Mo., for Michael McCoy and Robert Morgan.

David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

MATTHES, Senior Circuit Judge.

A multiple count indictment charged appellants with mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, and with conspiracy to commit mail fraud in violation of 18 U.S.C. § 371.[1] Their separate appeals have been consolidated for the purpose of argument and opinion.

Before trial appellants moved to dismiss the indictment asserting that it failed to allege that anyone had been defrauded of any money or property, and consequently failed to state an offense against the United States. The court denied the motions to dismiss and filed a memorandum opinion setting forth in detail the legal basis for sustaining the validity of the indictment. United States v. States, 362 F.Supp. 1293 (E. D.Mo.1973).

The appellants waived a jury and a bench trial resulted in their convictions. Their appeals challenge the court's action in entertaining the charge.

The indictment is lengthy. In addition to the conspiracy charge and the overt acts alleged in connection therewith, which is the subject of count one, there are 136 counts alleging substantive violations of either § 1341 or § 1342. Each substantive count was based upon the use of the mails for the purpose of executing the fraudulent scheme concocted by the parties to the conspiracy.[2]

Recognizing that the elements of the scheme or artifice to defraud are the heart of appellants' case, we review briefly the pertinent parts of the indictment and, in so doing, adopt the language of the district court set forth on page 1294 of 362 F.Supp.

The indictment charges that the defendants devised a scheme to defraud the voters and residents of the third and nineteenth wards of the City of St. Louis and the Board of Election Commissioners of the City of St. Louis by the use of fraudulent voter registrations and applications for absentee ballots. It is alleged that the purpose of the scheme to defraud was to influence the outcome of the election of the Republican Committeeman for the nineteenth ward and the Democratic Committeeman for the third ward "for the purpose of securing and controlling said political offices and the political influence and financial benefits of said offices * * *." It is further alleged that as part of the scheme to defraud, the defendants submitted false and fraudulent voter registration affidavits bearing the

1. In addition to appellants, six other persons were named as defendants and conspirators, and three unindicted persons were named as co-conspirators. Two of the other defendants pleaded guilty and four were acquitted.

2. 18 U.S.C. § 1341 prescribes certain punishments for whomever uses the Postal Service for the purpose of executing "any scheme or

artifice to defraud." 18 U.S.C. § 1342 proscribes the use of any fictitious name or address for the purpose of carrying out any scheme mentioned in § 1341. 18 U.S.C. § 371 makes unlawful any conspiracy to "commit any offense against the United States"; in this instance, mail fraud. Thus, if there is no offense under § 1341, the indictment is fatally defective.

names of false and fictitious persons with false addresses and caused the St. Louis Board of Election Commissioners ·to place absentee ballots for the fictitious persons in an authorized depository for mail matter.

. The evidence conclusively supported the fraudulent scheme as framed in the indictment. A summary of that evidence will serve to place the issue in controversy in proper perspective.

Appellant Isaac States was a candidate in 1972 for the office of Democratic Committeeman from the third ward in the City of St. Louis, and Robert Morgan was a candidate for Republican Committeeman from the nineteenth ward in the same city. Morgan entered into a scheme with his campaign manager to falsify voter registration affidavits in order to carry out an extensive write-in campaign for Morgan. Morgan obtained blank affidavits, and campaign workers began filling in the affidavits with fictitious names and addresses. A few days later, States was invited to join the operation in order to benefit his own campaign, and he agreed.

Appellants Morgan and States then devised a more elaborate aspect of the scheme, in which they applied for absentee ballots in the names of the phantom voters whose names appeared on the falsified voter registration affidavits. The absentee ballot operation eliminated the necessity of sending persons to the polls to vote under the fictitious names on the falsified registration affidavits, since the absentee ballots would be mailed by the Board of Election Commissioners to the nonexistent voters. A mailing address accessible to the appellants was listed on each absentee ballot application. The appellants planned to retrieve the ballots, mark them, and then return them to the election board for counting.

Appellant Michael McCoy was involved in filling out the applications for absentee ballots in the names of the nonexistent voters, as well as preparing the falsified voter registration affidavits. Each application stated that it was a violation of state law to improperly complete an application, and advised the applicant that the absentee ballot would be sent to him by registered mail.

The Board of Election Commissioners mailed numerous absentee ballots to nonexistent voters as a result of the appellants' scheme: twenty-one were actually delivered by the Postal Service, and others were held by the Service because the route mail carrier knew that the person named on the envelope containing the ballot did not live at the address indicated. The action of the Postal Service foiled the operation, and the appellants were subsequently indicted.

At the outset of their claim for reversal the appellants submit that the very language of 18 U.S.C. § 1341 mandates a holding that there is an offense under the statute only if money or property is involved in the scheme to defraud. Appellants argue that the first phrase of § 1341, dealing with "any scheme or artifice to defraud," must be read in conjunction with the second phrase, concerning "obtaining money or property by means of false or fraudulent pretenses, representations, or promises," which was added to the statute by a subsequent amendment.[3] Appellants suggest that the second phrase was added to the

---

3. 18 U.S.C. § 1341, as amended, now reads: .
§ 1341. Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to

predecessor of § 1341 because Congress believed that the "scheme to defraud" language included only frauds perpetrated without misrepresentations. They argue that the explicit "money or property" limitation in the added passage reveals that Congress believed that the first phrase in the original legislation dealt only with schemes to defraud of money or property.

But no case or legislative history is cited by the appellants supporting such an interpretation of legislative intent, nor does there appear to be any authority justifying such a construction of the statute. Moreover, not only does the appellants' conjunctive construction of the two phrases place a very strained and limited meaning on the broad wording of the first phrase, but a reading of the statute as a whole reveals that the two phrases in question are part of an uninterrupted listing of a series of obviously diverse schemes which result in criminal sanctions if the mails are used. The more natural construction of the wording in the statute is to view the two phrases independently, rather than complementary of one another. Indeed, numerous courts have construed the "scheme or artifice to defraud" language of § 1341 without reference to the "obtaining money or property" phrase. *See* United States v. Classic, 35 F.Supp. 457 (E.D.La.1940); *cf.* United States v. Regent Office Supply Co., 421 F.2d 1174 (2d Cir. 1970); Blachly v. United States, 380 F.2d 665 (5th Cir. 1967); Abbott v. United States, 239 F.2d 310 (5th Cir. 1956).

■ Consequently, we hold that the language of the statute on its face does not preclude a finding that a "scheme or artifice to defraud" need not concern money or property. Since the statutory wording itself does not conclusively resolve the issue presented by the appellants, and since the legislative history does not deal with the scope and meaning of the provision of the statute in issue, we examine judicial opinions construing § 1341 for assistance in definitely determining whether the statute should apply to the facts of this case.

■ Initially, it should be noted that the concept of fraud in § 1341 is to be construed very broadly. Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896); Shushan v. United States, 117 F.2d 110, 115 (5th Cir.), cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941); Gouled v. United States, 273 F. 506, 508 (2d Cir. 1921), where the court stated: "As it now stands, any kind or species of scheme or artifice to defraud is punishable in the national courts, if and whenever for the purpose of executing that scheme the postal establishment is used. * * *"; United States v. Procter & Gamble Co., 47 F.Supp. 676, 678 (D. Mass.1942). In Blachly v. United States, *supra*, the court observed:

> The crime of mail fraud is broad in scope. * * * The fraudulent aspect of the scheme to "defraud" is measured by a nontechnical standard. * * * Law puts its imprimatur on the accepted moral standards and condemns conduct which fails to match the "reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of the members of society." This is indeed broad. For as Judge Holmes once observed, "[t]he law does not define fraud; it needs no definition. It is as old as falsehood and as versable as human ingenuity."

380 F.2d at 671.

Likewise, the definition of fraud in § 1341 is to be broadly and liberally construed to further the purpose of the statute; namely, to prohibit the misuse of the mails to further fraudulent enterprises. *Cf.* Durland v. United States, *supra*. Accordingly, many courts have construed the term "scheme or artifice to defraud" to include within its ambit widely diverse schemes. *See* United

whom it is addressed, any such matter or thing, shall be fined not more than $1,000

or imprisoned not more than five years, or both.

States v. Edwards, 458 F.2d 875 (5th Cir.), cert. denied, 409 U.S. 1029, 93 S. Ct. 459, 34 L.Ed.2d 323 (1972) (divorce mill granting decrees of questionable validity); Shushan v. United States, *supra* (bribery of public officials); Abbott v. United States, *supra* (bribery of oil company employee to gain company's geophysical maps); Horman v. United States, 116 F. 350, 53 C.C.A. 570, cert. denied, 187 U.S. 641, 23 S.Ct. 841, 47 L. Ed. 845 (1902) (mailing of extortion note under predecessor to § 1341); United States v. Classic, *supra* (ballot tampering by election officials).

Here, we have a scheme by the appellants to deceive and defraud the public and the Board of Election Commissioners of certain intangible political and civil rights. Although few courts have considered whether vote fraud schemes using the Postal Service are included within the mail fraud statute, United States v. Classic, *supra*, is one such case decided on that issue. In *Classic*, the defendant election officials used the mails in the course of a scheme to change and alter ballots to read in favor of the eventually successful candidate. The district court overruled a demurrer to two mail fraud counts in the indictment against the officials, stating:

> The mail fraud statute denounces *the use of the mails*, in the actual, or attempted, execution of *any* devised scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations or promises * * *.

35 F.Supp. at 458 (emphasis in original).

Another district court case, United States v. Randle, 39 F.Supp. 759 (W.D. La.1941), relied upon by appellants, held that the mail fraud statute could not be applied in an election fraud case because neither the voters nor the sovereign had been defrauded of money or property. The court's opinion in *Randle*, however, appears to reflect a misunderstanding of the statutory basis for the indictment involved in that case, for two of the three cases cited by the *Randle* court dealt with a federal court's lack of statutory authority to prosecute in voter bribery cases under a statute making it a substantive offense to oppress citizens in the exercise of rights granted by the Constitution or laws of the United States. See United States v. Bathgate, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676 (1918); United States v. Gradwell, 243 U.S. 476, 37 S.Ct. 407, 61 L.Ed. 857 (1917). *Gradwell* also held that the conspiracy to bribe voters was not a "conspiracy to defraud the United States" under a predecessor to 18 U.S.C. § 371, a provision different from the mail fraud statute involved in *Randle* and in our case. The third opinion cited by *Randle*, United States v. Hammerschmidt, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968 (1924), also was prosecuted under a predecessor to § 371. Although the *Hammerschmidt* decision mentioned the mail fraud statute in dictum, it stated that an earlier circuit court of appeals case [4] had held that there need not be a finding of "trickery or cunning" for the conduct to be included within the language of the mail fraud statute, and that the holding in *Horman* should be limited to cases involving fraud of money or property.[5] In the instant case, it is obvious that "trickery or cunning" was involved in the scheme to falsify voter registration affidavits.

Thus we agree with the district court that neither United States v. Randle nor the decisions cited by that opinion serve

4. Horman v. United States, 116 F. 350, 53 C.C.A. 570, cert. denied, 187 U.S. 641, 23 S. Ct. 841, 47 L.Ed. 345 (1902).

5. Indeed, the suggestion in *Hammerschmidt* that the holding of *Horman* should be "confined" to those cases that deal with money or property fraud raises the implication that the Supreme Court recognized that the mail fraud statute covered a wider range of conduct than was at issue in *Horman*; namely, frauds not involving money or property as well as those that did. *See* 265 U.S. at 188–189, 44 S.Ct. 511, 68 L.Ed. 968.

as authority for the proposition that only schemes using the mails to defraud the victim of property or money can be brought within the ambit of 18 U.S.C. § 1341.

There are also cases concerning bribery schemes which support the view that money or tangible property need not be involved in the scheme to defraud in order for the mail fraud statute to be invoked. Beginning with Shushan v. United States, *supra,* the Fifth Circuit has included within the term "scheme or artifice to defraud" an operation to bribe and corrupt public officials in order to gain advantages and special treatment. *See also* Steiner v. United States, 134 F.2d 931 (5th Cir.), cert. denied, 319 U.S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721 (1943); Bradford v. United States, 129 F.2d 274 (5th Cir.), cert. denied, 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942). In *Shushan* there is the implication that a scheme to gain personal favors from public officials is a scheme to defraud the public, although the interest lost by the public can be described no more concretely than as an intangible right to the proper and honest administration of government. "[T]here must be a purpose to do wrong which is inconsistent with moral uprightness." *See* 117 F.2d at 15. This concept, that a scheme to defraud of certain intangible rights is grounds for prosecution under § 1341 if the mails are used, is more explicitly stated in United States v. Faser, 303 F.Supp. 380 (E.D. La.1969). In *Faser,* the defendants were indicted under the mail fraud statute after they accepted bribes to deposit public funds in a certain bank. There, as here, the defendants contended the indictment failed to state an offense because it did not allege that someone was actually defrauded out of something tangible that can be measured in terms of money or property. In rejecting that argument the court specifically discussed whether a fraudulent scheme must entail money or property in order

for there to be an offense under § 1341. As an alternative ground for overruling the motion to dismiss, the court stated:

[I]t is further the opinion of this Court that the thing out of which it is charged that the State was defrauded need not necessarily be that which can be measured in terms of money or property. It is the opinion of this Court that it is a violation of the statute in question if a person defrauds the State out of the "loyal and faithful services of an employee." * * *

Thus it seems quite clear that even if the thing out of which the State was allegedly defrauded was not susceptible of measurement in terms of money or physical property, a valid indictment may still result therefrom.

303 F.Supp. at 384–385.

■ *See also* United States v. George, 477 F.2d 508 (7th Cir. 1973); United States v. Procter & Gamble Co., 47 F. Supp. 676 (D.Mass.1942). In each of these cases, the court upheld the mail fraud indictment on the ground that the mails had been used in a scheme to defraud a corporation of the "honest and faithful services" of one or more employees. In addition, *cf.* Alexander v. United States, 95 F.2d 873 (8th Cir. 1938) (defendants convicted for using mails in scheme "to defraud the public" by issuing false medical diplomas and licenses to persons without medical education). These cases serve as persuasive authority for the proposition that in a prosecution for use of the mails to further and execute a vote fraud scheme the indictment states an offense even though it does not contain allegations that anyone was defrauded of any property or money.

■ Nevertheless, the appellants argue that the application of the mail fraud statute to the facts of this case will result in a "policing" of state election procedure, and that Congress has never explicitly authorized such wide-

spread intervention into state affairs. The appellants' argument misinterprets the purpose of the mail fraud legislation. The focus of the statute is upon the misuse of the Postal Service, not the regulation of state affairs, and Congress clearly has the authority to regulate such misuse of the mails. *See* Badders v. United States, 240 U.S. 391, 393, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916): "The overt act of putting a letter into the post-office of the United States is a matter that Congress may regulate. * * *. Whatever the limits to its power, it may forbid any such acts done in furtherance of a scheme it regards as contrary to public policy, whether it can forbid the scheme or not." The purpose of 18 U.S.C. § 1341 is to prevent the Postal Service from being used to carry out fraudulent schemes, regardless of what is the exact nature of the scheme and regardless of whether it happens to be forbidden by state law. *See* Parr v. United States, 363 U.S. 370, 389, 390, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); *cf.* Brady v. United States, 24 F.2d 405, 407 (8th Cir. 1928). "Congress definitely intends that the misuse of the mails shall be controlled even though it be its policy to leave the control of elections to the several States." United States v. Classic, *supra*, 35 F.Supp. at 458.

The appellants' argument presents no justification for refusing to apply the mail fraud statutes to the facts of this case. The prosecution of appellants in federal court for mail fraud does not interfere with the state's enforcement of its election laws. There are no grounds for dismissing the indictment under the principles of comity or the abstention doctrine or under any other principle of federalism.

Finally, appellant Michael McCoy urges that there is insufficient evidence to support his conviction. We disagree. There was adequate evidence to support a finding beyond reasonable doubt that McCoy willingly and knowingly participated in the illegal absentee ballot operation. McCoy admitted that he falsely completed absentee ballot applications, and each application advised the applicant of the illegality of false statements and notified the applicant that the ballot would be sent by mail to him.

In sum, we hold the indictment alleged a federal offense and the evidence proved every element thereof.

Affirmed.

ROSS, Circuit Judge (concurring).

I reluctantly concur. The law, as capably expressed by Judge Matthes, leaves us no other alternative.

However, I cannot believe that it was the original intent of Congress that the Federal Government should take over the prosecution of every state crime involving fraud just because the mails have been used in furtherance of that crime. The facts in this case show that this election fraud was purely a state matter. It should have been prosecuted in state court. The Assistant United States Attorney conceded in oral argument that the case was not the type of mail fraud case covered by written instructions contained in the United States Attorneys' manual. In spite of this, the decision was made by the United States Attorney to prosecute the case without asking or receiving the approval of the Department of Justice. In so doing, he relieved the state of its duty to police the violation of its local election laws and helped create a precedent which will encourage the same sort of unwarranted federal preemption in the future.