UNITED STATES of America, Appellee,

v.

Leo Christy CONDOLON, Appellant.

No. 78–5186.

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1979.

Decided June 6, 1979.

**8**

Roger E. Zuckerman, Washington, D.C. (William W. Taylor, III, Zuckerman, Spaeder & Taylor, Mark Foster, Moore & Foster, Washington, D.C., on brief), for appellant.

Theodore S. Greenberg and Justin W. Williams, Asst. U. S. Attys. Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., and June Wagoner, Sp. Asst. U. S. Atty., on brief), for appellee.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Leo Christy Condolon appeals his conviction for wire fraud in violation of 18 U.S.C. § 1343. We affirm.

Condolon was found guilty of using a telephone in connection with his operation of a bogus talent agency which he established to meet and seduce young women. The stipulated facts show that Condolon rented an apartment suite, obtained a business license, and placed numerous newspaper advertisements under the name Cinema Enterprises. Posing as a talent agent and producer connected with major movie companies, he falsely represented to the women who contacted him that he could place them in legitimate and well-paid modeling and acting jobs. Condolon also told certain women that their employment depended upon their willingness to submit to his sexual advances. As a result of Condolon's activity, a number of women spent time, effort, and money in taking leave from their jobs, hiring baby-sitters, travelling to his office, and memorizing scripts. Some yielded to his advances. At no time did Condolon intend to secure jobs for any of the women who contacted him. His enterprise was solely a scheme to gratify his sexual desires.

Condolon contends primarily that his conviction involves an unwarranted extension of the federal wire fraud statute. First, he argues that the statute reaches only frauds designed to obtain tangible property or frauds that breach a significant fiduciary duty. Next, he says that the prosecution against him protects a bargain—the exchange of sexual favors for career advancement—that is contrary to public policy. Finally, he claims that a series of misrepresentations designed simply to secure introductions to women is not a scheme to defraud within the meaning of the federal statute.

█ Condolon's arguments are unpersuasive. In the first place, he mischaracterizes his conduct. His scheme was not a simple matter of misrepresentations designed to meet women. It was an elaborate commercial facade surrounding a completely fraudulent enterprise. Condolon never intended to provide any of the career opportunities that he advertised. In this respect, Condolon's enterprise differs from the scheme considered in *United States v. Regent Office Supply*, 421 F.2d 1174 (2d Cir. 1970), a case on which he relies. Condolon also misconceives the nature of a wire fraud prosecution. The gravamen of the offense is simply the misuse of interstate communication facilities to execute "any scheme or artifice to defraud." 18 U.S.C. § 1343; *see United States v. States*, 488 F.2d 761, 767 (8th Cir. 1973). The prosecution condones no immoral bargain; it concerns itself with neither the victim's loss nor the defendant's gain. *See United States v. O'Malley*, 535 F.2d 589, 592 (10th Cir. 1976); *United States v. Bagdasian*, 291 F.2d 163, 164 (4th Cir. 1961).

█ The fraudulent scheme need not be designed to obtain money or property, nor need it involve the breach of a fiduciary relationship. In *United States v. Louder-*

*man,* 576 F.2d 1383, 1387–88 (9th Cir. 1978), for example, two debt collectors were convicted of wire fraud for misrepresenting themselves to the telephone company and the post office in order to obtain information that deprived subscribers and box holders of their privacy. Likewise, in *United States v. States,* 488 F.2d 761 (8th Cir. 1973), two candidates for local political offices were found guilty under the cognate mail fraud statute for falsifying voting documents. The court found that the defendants' scheme to deprive the public of intangible civil rights violated the federal statute. *See* 488 F.2d at 765. The time, effort, money, and expectations of which Condolon defrauded the women who contacted him are comparable to the interests invaded in *Louderman* and *States.* We therefore conclude that Condolon's enterprise was a scheme to defraud within the meaning of the wire fraud statute.

Condolon also raises two constitutional objections to his conviction. First, he argues that the statute gave him no reasonable notice that his conduct was proscribed. Second, he contends that application of the statute to his private, consensual sexual activities violates his constitutional right to privacy.

We see no merit in these constitutional claims. Application of the wire fraud statute to Condolon's scheme was foreseeable. Fraud is a broad concept; "the plain language of the statute condemns any scheme to defraud in which [the interstate wires] are employed." *United States v. Brewer,* 528 F.2d 492, 495 (4th Cir. 1975). The claim that the wire fraud statute gives no reasonable notice of its applicability to a fraud not involving tangible property or fiduciary duties was rejected in *United States v. Louderman,* 576 F.2d 1383, 1388 (9th Cir. 1978). We also reject the suggestion that this prosecution infringes the defendant's right of privacy. The federal statute was not used to punish Condolon for his sexual activities. Condolon was prosecuted for establishing a bogus commercial enterprise and then using the tele-phone to accomplish his fraudulent intentions.

*AFFIRMED.*